**UNITED STATES of America and Olin Mathieson Chemical Corp.**

**v.**

**DEPARTMENT OF REVENUE OF the STATE OF ILLINOIS and Theodore J. Isaacs, Director of Revenue.**

**No. 60 C 1365.**

United States District Court
N. D. Illinois, E. D.

March 7, 1962.

Robson, District Judge, dissented.

James P. O'Brien, U. S. Atty., Chicago, Ill., for United States of America.

John H. Carruthers, East Alton, Ill., for Olin Mathieson Chemical Corp.

William C. Wines, Asst. Atty. Gen., for Department of Revenue of State of Illinois.

Before KNOCH, Circuit Judge, and LA BUY and ROBSON, District Judges.

LA BUY, District Judge.

Pursuant to the mandate of the Supreme Court of the United States, the above cause is before us "for further consideration in the light of the developments which have occurred since the in-

junction was issued." Department of Revenue of Illinois et al. v. United States et al., 368 U.S. 30, 82 S.Ct. 146, 7 L.Ed. 2d 90 (1961).

Subsequent to our holding of the unconstitutionality of Sec. 441 of the Illinois Retailers' Occupation Tax Act (Ch. 120, Smith-Hurd Ann. Stats.) and the issuance of the aforementioned injunction, the following events occurred: (1) the Supreme Court of Illinois on May 22, 1961 in an unreported opinion, People ex rel. Holland Coal Co. v. Isaacs, struck down the entire exemption section of the Retailers' Occupation Tax Act as being unconstitutional; (2) the Department of Revenue issued regulations to conform to that opinion by requiring collection of the occupation tax from retailers who sold to the State of Illinois, its agencies and instrumentalities, and the General Assembly of the State of Illinois in July, 1961 (Laws of Ill.1961, p. 2313, S.H.A. ch. 120, § 441) exempted from the measure of the occupation tax proceeds of sales to any corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or educational purposes "unless the creation of such an exemption will automatically, and contrary to the intent of this Act, exempt from the measure of the Retailers' Occupation Tax Act the proceeds of sales to the United States Government, its agencies and instrumentalities and contractors with that Government"; and (3) the Illinois Supreme Court in its second opinion issued September 22, 1961 in the Holland Coal Co. case (reported, 22 Ill.2d 477, 176 N. E.2d 889) adhered to its finding of the unconstitutionality of the exemption accorded the State of Illinois, its agencies and instrumentalities but saved the exemption accorded to proceeds of sales to charities on the ground of the separability in Sec. 441 of the exemption granted to sales at retail to governmental units from the exemption granted to sales at retail to charities, schools and churches.

Upon return of the mandate from the Supreme Court of the United States, we permitted the United States and Olin Mathieson Chemical Corporation to file a second amended complaint wherein the fact allegations remain the same, but in which the bases of alleged discrimination have been broadened to encompass (1) the exemption of retailers who sell to charitable, religious and educational institutions with no comparable exemption to retailers who sell to the federal government, and (2) the assessment and administration by the State of Illinois of the Retailers' Occupation Tax Act (Ch. 120, Secs. 440 et seq., Smith-Hurd Ann. Stats.) and the Use Tax Act (Ch. 120, Secs. 439.1 et seq., Smith-Hurd Ann. Stats.) in such manner that the incidence of the occupation tax in law and in fact is borne by the purchaser, who in the instant case is the United States and therefore violates the doctrine of sovereign immunity.

The first issue received its stimulus from language contained in our first opinion which held that the exemption provided by Sec. 441 of the Retailers' Occupation Tax Act was unconstitutional not only because it granted exemption to the class of retailers selling to Illinois, its agencies and instrumentalities and not to those who dealt with the federal government, but also because it exempted retailers who sold to certain non-governmental units such as charities, schools and churches. 191 F.Supp. 723, 729. We do not hesitate to acknowledge that the inclusion of the category of non-governmental units was neither required nor was it necessary to our determination of the unconstitutionality of Sec. 441. We shall and do hereby delete the language of our opinion which appears in the last paragraph of the first column of page 729 to the end of the quotation at the top of the second column.

However, this issue has been raised by the second amended complaint. Certain charitable, religious and educational institutions have been permitted to intervene. It is urged that the retailer who sells to the federal government must pay the retailers' occupation tax whereas the retailer who sells to charitable, re-

ligious and educational institutions need not pay such tax resulting in discriminatory treatment.

██ We iterate briefly the principles applied in our first opinion. Tax exemptions are founded on public policy and are granted for the accomplishment of public purposes which will benefit the public generally. Tax exemptions are subject to the limitation that they and the classification upon which they are based be reasonable, not arbitrary, and apply to all persons similarly situated.

The exemption accorded to non-governmental institutions operated for charitable, religious and educational purposes is not of recent origin, but is the continuance of an old and well-established public policy. Article IX, Sec. 3 of the Constitution of the State of Illinois S. H.A., provides that property used exclusively for charitable, religious and educational purposes may be exempted from taxation by general law. The Revenue Act of the State of Illinois, Secs. 500.1, 500.2, 500.7, ch. 120, expressly exempts from taxation property used for such beneficent objectives. Many states of the Union have similarly provided for such exemptions from taxation. The federal government has also exempted the income of corporations organized and operated exclusively for religious, charitable or educational purposes. 26 U.S. C.A. Sec. 501(c).

The exemption of these institutions encourages their existence and relieves the State of the heavy burden of maintaining and performing these essential services. Article VIII, Sec. 3 of the Constitution of the State of Illinois forbids the use of public funds in the "aid of any church or sectarian purposes" nor may "any grant or donation of land, money or other personal property ever be made by the state or any such public corporation, to any church, or for any sectarian purpose." Obviously, a distinct dissimilarity exists between religious institutions and governmental bodies. While charitable and educational objectives can, and are, performed through governmental units, the revenue to support them is derived from the power and authority of the government to tax its citizens for the public welfare. But no compulsory process exists to exact contributions to non-governmental organizations dedicated to the moral, spiritual and physical well-being of mankind. The financial resources to accomplish their objectives are derived from the concept of giving voluntarily—without legal obligation or compulsion. This difference forms a reasonable basis for a separate classification and the exemption, therefore, does not discriminate against governmental bodies.

██ We are in accord with the holding of the Supreme Court of Illinois that the classification of governmental units and these non-governmental units is indeed separate and distinct, and that there is a reasonable classification based on differences between them; that Sec. 441 of the Illinois Retailers' Occupation Tax Act which did not exempt retailers who sold to the federal government but did exempt retailers who sold to charities, schools and churches is not unconstitutional for that reason.

██ The second issue was not presented at the first hearing. The second amended complaint alleges that the Illinois Use Tax Act (Ch. 120, Secs. 439.1 et seq.) which imposes a tax on purchasers of tangible personal property, and particularly Sec. 439.8 thereof excusing a retailer from remitting such use tax to the State if he has paid the occupation tax, results in placing the legal tax burden upon the purchaser, and therefore, in the instant case, upon the federal government. This set-off provision was not held to be unconstitutional as a gift of public funds to the retailer, or the commutation of his tax, or cancellation of a debt due because the legislature intended only one tax to reach the coffers of the State treasury. Turner v. Wright, 11 Ill.2d 161, 142 N.E.2d 84, app.dism. 355 U.S. 65, 78 S.Ct. 140, 2 L.Ed.2d 106 (1957).

The Use Tax Act does not expressly exempt the United States. However,

Rule No. 3 of the Rules promulgated under that law provides in the last paragraph as follows:

"Since the State cannot place the legal burden of a tax directly on the Federal Government or a foreign government, such governments are not required to remit the use tax directly to this State, nor can such governments be compelled to reimburse retailers for the use tax. However, this does not relieve retailers of their liability for retailers' occupation tax on receipts from retail sales to the Federal Government or to foreign governments (see paragraph 1 of Rule No. 40 of the retailers' occupation tax Rules and Regulations)."

The tax which the federal government has here assumed by contract is the tax obligation due the State of Illinois from Olin Mathieson, the retailer. Plaintiffs' argument on discrimination concedes that the use tax is not exacted from the federal government and it is urged by plaintiffs that a retailer who sells to the federal government must pay the occupation tax out of his own pocket because he cannot collect the use tax from the purchasing sovereign; whereas a retailer dealing with a purchaser who is not the federal government need not pay the occupation tax when he collects the use tax from such purchaser. This contention of "discrimination" among retailers because of the immunity of the United States from taxation contradicts the theory urged by plaintiffs. A discrimination among taxpayers resulting from adherence to the doctrine of sovereign immunity is not only reasonable but mandatory.

The crux of plaintiffs' argument on discrimination lies in the fact that by custom and usage the retailer has "passed" his occupation tax to the buyer, including the federal government, even though the legal incidence of such tax falls on him alone. This practice of "passing" the tax to the buyer does not change the nature of that tax into the "use" tax. Such a practice is unrelated to any action taken by the State of Illinois in the administration of the occupation tax or the use tax.

We reassert that the state tax involved in State of Alabama v. King & Boozer, (1941) 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, and in Kern-Limerick v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1953), was required by statute to be collected from the purchaser and the facts presented were determined in the context of the *legal* incidence thereof. See also James v. Dravo Construction Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). So far as a different view has prevailed, see Panhandle Oil v. Knox, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857 (1927), the Supreme Court of the United States has rejected it "as no longer tenable". State of Alabama v. King & Boozer, supra, 314 U.S. pp. 8–9, 62 S.Ct. 43. We decline to apply a new criterion or to range free of the boundaries which the Supreme Court of the United States has delineated.

The defendants' motion to strike the second amended complaint is overruled; the plaintiffs' motion for a permanent injunction as prayed for in its second amended complaint is denied. An injunction will issue for the period when the State of Illinois did not assess or collect any taxes with respect to proceeds of sales to the State of Illinois, its agencies or any of its political subdivisions.

Counsel will prepare an appropriate order for entry by the court.

ROBSON, District Judge (dissenting).

I am impelled to disagree with the Court's conclusion because of the firmness of my conviction that the United States Government has been discriminated against and its sovereignty disregarded and impaired by the imposition of the instant tax. I believe there is a serious doubt that an exemption from the tax of a classification limited to charities, religious, and educational institutions has a sound basis in the law, as stated by the Court in its opinion.

While this classification may be appropriate under ordinary circumstances, I

am of the opinion there is no legal justification for eleemosynary institutions being elevated to a position superior to that of the Federal Government, which has the primary responsibility of protecting our welfare and serving the public good. Assuming, as is pointed out in the cases, that technically there is a basis for differentiating between the two classifications because the Government has a means for self-support, whereas charities do not, it does not follow that the classifications exempted are entitled to receive or may receive any more favored treatment than the Government itself which, as the Illinois Supreme Court recognized, "is sharing more and more the responsibilities formerly committed solely to the State and its local governments." (The People ex rel. Holland Coal Company v. Theodore J. Isaacs, Director of Revenue, 22 Ill.2d 477, 484, 176 N.E.2d 889, 893 (1961)). This difference, therefore, under the instant facts, could be said to be dubious and illusory.

A fundamental principle of law proscribes discrimination in the treatment of the Federal Government in the imposition of taxes. It was said in United States, et al. v. City of Detroit, 355 U.S. 466, at p. 473, 78 S.Ct. 474, at p. 478, 2 L.Ed.2d 424 (1958):

> "It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals. Cf. McCulloch v. Maryland, 4 Wheat. 316 [4 L.Ed. 579]."

There could be no stronger emphasis of the immutability of this principle than was stated in the Moses Lake Homes, Inc., et al. v. Grant County decision, 365 U.S. 744, 751, 81 S.Ct. 870, 874, 6 L.Ed.2d 66, that *"If anything is settled in the law, it is that a State may not discriminate against the Federal Government * * *."* (Italics supplied.) That statement was made by the United States Supreme Court in 1961. In Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, at p. 387, 80 S.Ct. 474, at p. 481, 4 L.Ed.2d 384 (1960), the Court said "[I]t still remains true * * * that a state tax may not discriminate against the Government or those with whom it deals." In upholding the validity of a state tax in the case of City of Detroit et al. v. Murray Corporation of America et al., 355 U.S. 489, at p. 495, 78 S.Ct. 458, at p. 462, 2 L. Ed.2d 441 (1958), the same Court said: "There was no discrimination against the Federal Government, its property *or those with whom it does business."* (Italics supplied.)

The items here subjected to the Illinois tax were aircraft engine starter cartridges for the United States Air Force aircraft, required for national defense. They must be deemed indispensable to the functioning of the Government in its most basic aspect. The Supreme Court decisions would indicate that the State may not impede such functions of the Government by imposing taxes. In the case of Panhandle Oil Company v. Mississippi ex rel. Knox, Attorney General, 277 U.S. 218, at pp. 221–222, 48 S.Ct. 451, at p. 453, 72 L.Ed. 857 (1928), it was said:

> "The United States is empowered by the Constitution to maintain and operate the fleet * * *. That authorization and laws enacted pursuant thereto are supreme * * * and, in case of conflict, they control state enactments. The States may *not* burden or interfere with the exertion of national power or make it a source of revenue or take the funds raised or tax the means used for the performance of federal functions. * * * The right of the United States to make such purchases is derived from the Constitution. The petitioner's right to make sales to the United States was not given by the State and does not depend on state laws; it results from the authority of the national government under the Constitution to choose its own means and sources of supply. * * * [*I*]*t* [Mississippi] *may not lay any*

*tax upon transactions by which the United States secures the things desired for its governmental purposes.*

"The validity of the taxes claimed is to be determined by the practical effect of enforcement in respect of sales to the government. * * * The amount of money claimed by the State rises and falls precisely as does the quantity of gasoline so secured by the government. * * * The necessary operation of these enactments when so construed is directly to retard, impede, and burden the exertion by the United States of its constitutional powers to operate the fleet * * *. To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. * * * And that is to tax the United States * * *.

"The exactions demanded * * * infringe its right to have the constitutional independence óf the United States in respect of such purchases remain untrammeled." (Italics supplied.)

Not only do I believe this tax to be illegal because discriminatory, but also because it is in violation of the sovereign immunity of the United States. This principle of sovereignty was stated in the United States v. Allegheny County case, 322 U.S. 174, at p. 177, 64 S.Ct. 908, at p. 911, 88 L.Ed. 1209, thus:

"* * * [U]nshaken, rarely questioned * * * is the principle that poscessions, institutions, and activities of the Federal Government itself in the absence of express congressional consent are not subject to any form of state taxation."

It was there said (at p. 183, 64 S.Ct. at p. 913) that the "purpose cf the supremacy clause was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls."

The rule of sovereignty was clearly recognized in the case of Kern-Limerick, Inc., et al. v. Scurlock, Commissioner of Revenues for Arkansas, 347 U.S. 110, at p. 122, 74 S.Ct. 403, at p. 411, 98 L.Ed. 546 (1954), where the Supreme Court said:

"The doctrine of sovereign immunity is so embedded in constitutional history and practice that this Court cannot subject the Government or its official agencies to state taxation without a clear congressional mandate."

In that case the Government was, as here, under a contract to stand the burden of the state taxes imposed. The Court said that the recognition of the constitutional immunity of the Federal Government from state exactions rests upon unquestioned authority. A somewhat similar statement is made .in United States et al. v. County of Allegheny, 322 U.S. 174, 176, 64 S.Ct. 908 (1944). The Court also said in that case, at p. 186, 64 S.Ct. at p. 915 that

"The fact that materials are destined to be furnished to the Government does not exempt them from sales taxes imposed on the Contractor's vendor. But in all of these cases what we have denied is immunity for the contractor's *own* property, profits, or purchases. We have not held either that the Government could be taxed or its contractors taxed because property of the Government was in their hands. The distinction between taxation of private interests and taxation of governmental interests * * * is fundamental in application of the immunity doctrine as developed in this country." (Italics supplied.)

I am impressed with the importance of the principle that "in passing on the constitutionality of a state tax 'we are concerned only with its practical operation,' * * * we must look through form and behind labels to substance." (City of Detroit et al. v. Murray Corporation of America et al., 355 U.S. 489, 492, 78 S.Ct. 458, 460 (1958)). As the Government points out in its brief, the tax, in legal incidence as well as practical operation, falls on the vendee—the

United States. This was recognized by the Illinois Supreme Court in its second opinion in People ex rel. Holland Coal Company v. Theodore J. Isaacs, Director of Revenue, 22 Ill.2d 477, at p. 480, 176 N.E.2d 889, at p. 891 when it said:

> "It is the common and accepted practice of persons subject to the retailers' occupation tax to quote and collect the tax separately from the selling price. In such circumstances the burden of the tax is shifted forward to the purchaser."

But irrespective of that statement we are not bound "where a federal right is concerned * * * by the characterization given to a state tax by state courts or Legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted." United States v. County of Allegheny, 322 U.S. 174, 184, 64 S.Ct. 908, 914 (1944).

The pleadings in this case disclose the very real and substantial effect which the Illinois tax actually has upon the United States which is required to pay nearly a million dollars in taxes on the aircraft parts it purchased. No charity, educational institution or religious organization is required to pay any tax on its purchases made to fulfill its functions. It therefore seems self-evident that for the United States Government to be subjected to the incidence of the tax in the purchase of parts for defense is highly discriminatory and unjust, as well as an impairment of sovereignty, and therefore unconstitutional under the ancient doctrine of McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 and all the numerous later cases which have adhered to its pronouncement.

It would follow from my conclusion that the tax act here involved is invalid and unconstitutional as being discriminatory against the United States and impairing its sovereignty, that I would deny defendant's motion to dismiss and allow plaintiffs' motion for entry of judgment in accordance with the prayer of the second amended complaint.