(No. 37312.—

NATIONAL BANK OF HYDE PARK IN CHICAGO *et al.,* Appellees, *vs.* THEODORE J. ISAACS, Director of Revenue, *et al.,* Appellants.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellants.

ADELBERT BROWN, of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

By an amendment to the Retailers' Occupation Tax Act adopted in 1953, the General Assembly exempted from the tax the proceeds of "sales to the State of Illinois, any county, political subdivision or municipality thereof, or to any instrumentality or institution of any of the governmental units aforesaid." (Ill. Rev. Stat. 1953, chap. 120, par. 441.) This exemption was repealed by an act approved July 31, 1961. (Ill. Rev. Stat. 1961, chap. 120, par. 441.) In the interval between its enactment and its repeal, it had been held invalid both by the United States District Court for the Northern District of Illinois, (*United States* v. *Department of Revenue,* (N.D. Ill.) 191 F. Supp. 723) and by this court. (*People ex rel. Holland Coal Co.* v. *Isaacs, 22* Ill.2d 477.) The decision in both cases was upon the ground that the exemption of gross receipts from sales of tangible personal property to the State, without also exempting gross receipts from sales of tangible personal property to the United States, created an invalid and unconstitutional discrimination.

The complaint in this case was filed on October 14, 1960, while the exemption was in effect, by the National Bank of Hyde Park in Chicago. It alleged that national banks are instrumentalities of the United States Government, and that

the statutory exemption unlawfully discriminates against them because the tax is imposed upon gross receipts from sales of office equipment and supplies to national banks, while gross receipts from sales of similar equipment to instrumentalities of the State are exempted. Numerous companies engaged in the business of selling supplies to national banks were joined as defendants, and they were required, by temporary injunction, to pay under protest any taxes alleged to be due from them on account of such sales. In April of 1962, the circuit court of Cook County entered a decree which provided that the plaintiff "is entitled to a refund of all payments of Retailers' Occupation Tax made by the defendant-suppliers under protest to and including the period ending July 31, 1961, * * *." The defendant State officials have appealed directly to this court. The revenue is involved.

No question is presented here of the sovereign immunity of the United States from State or local taxes. The retailers' occupation tax is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls. (*People ex rel. Holland Coal Co.* v. *Isaacs, 22* Ill.2d 477, 480-481; *Alabama* v. *King & Boozer* (1941), 314 U.S. 1; *Kern-Limerick, Inc.* v. *Scurlock*, (1953), 347 U.S. 110.) In the three-judge District Court proceedings involving this exemption, the purchaser was the United States itself, through its Department of Defense, and under the terms of its procurement contracts the United States was obliged to reimburse the retailer for retailers' occupation taxes incurred. The District Court nonetheless held the retailer subject to tax, after the discrimination had been removed, and the United States Supreme Court has affirmed. *United States* v. *Department of Revenue* (1961), 191 F. Supp. 723, 727-28, upon remand (1962) 202 F. Supp. 757, 760, affirmed *per curiam* (1962), 371 U.S. 21, 7 L. ed. 2d 90, 83 S. Ct. 117.

National banks, while privately owned and operated for private profit, are chartered by Congress and are characterized as instrumentalities of the Federal government. As such, they are subject to taxation only within the limits Congress has prescribed. (*People* v. *First Nat. Bank of La Grange,* 351 Ill. 435; *Iowa-Des Moines Nat. Bank* v. *Bennett,* 284 U.S. 239.) The tax in question here, however, is levied not upon the national bank but upon the independent private companies that sell it office equipment and supplies. There is no reason why the bank should enjoy a greater immunity from the indirect burden of taxes paid by those with whom it deals than the United States itself enjoys. Concededly, therefore, the tax does not offend the Federal government's sovereign immunity or the restrictions imposed by Congress upon taxation of national banks. 12 U.S. Code, sec. 548; *Western Lithograph Co.* v. *State Board of Equalization* (1938), 11 Cal. 2d 156, 78 P. 2d 731; *United States* v. *Department of Revenue* (N.D. Ill. 1962) 202 F. Supp. 757.

The sole challenge to the tax, then, is the claim of discrimination during the period when the proceeds of sales to the State and its instrumentalities were exempt while the proceeds of like sales to the United States and its instrumentalities were subject to the tax. The principle invoked requires that "the State treat those who deal with the [Federal] Government as well as it treats those with whom it deals itself." (*Phillips Chemical Co.* v. *Dumas Independent School Dist.* (1959), 361 U.S. 376, 385.) Activities under State auspices must not be preferred, for that reason alone, over the same activities under Federal auspices.

If we look only to the language of the statute it does appear to discriminate between "instrumentalities" of the State and "instrumentalities" of the United States, for it exempts from the tax the proceeds of retail sales to the former and does not exempt the proceeds of retail sales to the latter. It is true that national banks are regarded as in-

strumentalities of the United States. But it was neither alleged nor proved in this case that banks, or any similar financial institutions chartered by the State of Illinois, are regarded as instrumentalities of the State. Particularly, it was neither alleged nor proved that the General Assembly intended to include any privately owned State chartered financial institutions within the exempt category of State instrumentalities, or that the statute was actually so applied by the Department of Revenue.

If there was discrimination during the period the exemption was in effect, therefore, it must have resulted from the fact that the proceeds of sales to the State of Illinois and its municipalities were exempt, while the proceeds of sales to privately owned national banks, like the proceeds of sales to privately owned State banks, were subject to the tax.

In this classification we see no arbitrary discrimination. Taxes are levied to support government, and exemptions that operate to relieve government of the economic burdens of the taxes it has imposed avoid the waste motion of collecting with the right hand and paying out with the left. Although exemptions intended to reduce governmental costs must extend equally to the State and the United States, as we held in *People ex rel. Holland Coal Co.* v. *Isaacs, 22 Ill.2d 477,* reason does not require that the exemption extend to privately owned enterprises where no reduction in governmental costs would result. To exempt retailers from the tax on the proceeds of sales to banks, State or national, would increase private profit, not public funds.

As we have pointed out, there is neither allegation nor proof in this record that the repealed exemption operated to the benefit of any privately owned corporation chartered by the State that could reasonably be classed with national banks. We conclude, therefore, that the exemption of the proceeds of sales to the State and to local government did not discriminate against national banks.

This conclusion finds support in the determinations of Congress and the judicial decisions effectuating its intent. For a century, Congress has limited State powers in order to protect national banks from "discriminatory taxation." (*First Nat. Bank of Hartford, Wisconsin* v. *City of Hartford* (1926), 273 U.S. 548, 558.) In testing for such discrimination, the standard of comparison has always been private activity in analogous fields of business. Thus a State tax on the shares of stock in a national bank may be levied if it does not exceed the tax "upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks." (12 U.S. Code, sec. 548, subsec. 1(b); see *Michigan Nat. Bank* v. *Michigan*, (1961), 365 U.S. 467.) Similarly, a State may tax the net income of national banks so long as the rate is not "higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits." 12 U.S. Code, sec. 548, subsec. 1(c); see *Security-First National Bank* v. *Franchise Tax Board* (1961), 11 Cal. Rptr. 289, 359 P. 2d 625.

Neither Congress nor the United States Supreme Court has ever suggested that taxes are discriminatory unless their burden falls on the State and its subdivisions as well as on national banks. On the contrary, it has been held that the exemption of State or local securities from a tax applicable to securities issued by national banks is valid. *Mercantile Nat. Bank* v. *Mayor of New York* (1887), 121 U.S. 138; *Adams & Co.* v. *Mayor of Nashville* (1877), 95 U.S. 19.

The circuit court erred, therefore, in holding that the retailers' occupation tax discriminated unconstitutionally against national banks during the period that the exemption was in effect. Its decree is reversed.

*Decree reversed.*