# Whether Missouri Municipalities May Tax the Portion of Federal Salaries Voluntarily Contributed to the Thrift Savings Plan

Intergovernmental tax immunity does not preclude municipalities in Missouri from levying an earnings tax on the voluntary contributions of federal employees to the Thrift Savings Plan.

November 10, 1993

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF AGRICULTURE

You have requested our opinion on the following question: Must the National Finance Center ("NFC") of the Department of Agriculture ("USDA") withhold and remit local earnings taxes levied by the municipalities of St. Louis and Kansas City, Missouri, upon that portion of federal employees' salaries voluntarily contributed to the Thrift Savings Plan ("TSP")?[1] The Financial Management Service ("FMS") of the Department of the Treasury ("Treasury") has taken the position that NFC should not withhold the Kansas City earnings taxes on TSP contributions of FMS employees because similar payments made by municipal employees are not subject to the earnings tax.[2] As we explain in further detail below, we disagree with this approach because TSP contributions, which are held in trust for the contributors, can be distinguished from the deferred compensation plan payments that are exempt — by a court ruling — from earnings taxes. Thus, intergovernmental tax immunity does not preclude the Missouri municipalities from levying an earnings tax on voluntary TSP contributions. The St. Louis and Kansas City earnings taxes should be withheld and remitted.

## I.

The Thrift Savings Plan, 5 U.S.C. §§ 8431-8440d, which was established as part of the Federal Employees' Retirement System ("FERS"), 5 U.S.C. §§ 8401-8479, enables each federal employee covered by FERS to elect to contribute, in any pay period, as much as ten percent of the employee's "basic pay" to the employee's TSP retirement account. 5 U.S.C. § 8432(a). All TSP contributions are

---

[1] Letter for Daniel Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, from James S Gilhland, General Counsel, Department of Agriculture (July 12, 1993).

[2] Neither FMS nor any other unit of Treasury has submitted a brief in response to the USDA request, but the position of Treasury is set forth in a memorandum written by Attorney-Advisor Elton A Ellison of the Office of Chief Counsel dated May 1, 1990, and a letter drafted by Assistant Commissioner Bland T. Brockenborough dated January 2, 1992

channeled into a Thrift Savings Fund in the Treasury of the United States.[3] *Id.* § 8437(b). These contributions are then held in the Fund in trust for the employees who made the contributions. *Id.* § 8437(g). By law, the Thrift Savings Fund is "treated as a trust described in section 401(a) of [the Internal Revenue] Code which is exempt from taxation under section 501(a) of such Code," *id.* § 8440(a)(1), and contributions to the Thrift Savings Fund are "treated in the same manner as contributions to" such a trust. *Id.* § 8440(a)(2).

## II.

Two cities in Missouri — St. Louis and Kansas City — have adopted ordinances that impose a tax on salaries, wages, and other compensation earned or received by city residents and nonresidents who work in the cities. Kansas City, Mo., Code 32.141(a)(1) & (2); St. Louis, Mo., Code § 5.22.020(A) & (B). Kansas City imposes "a one per centum (1.0%) per annum" municipal tax:

(1)  On all salaries, wages, commissions and other compensation earned or received by resident individuals of the city for work done or services performed or rendered.

(2)  On all salaries, wages, commissions and other compensation earned or received by nonresident individuals of the city for work done or services performed or rendered in the city.

Kansas City, Mo., Code § 32.141(a). Similarly, St. Louis imposes an earnings tax "for general revenue purposes of one percent" on all "salaries, wages, commissions and other compensation" earned by its residents and by nonresidents for "work done or services performed" in the city. St. Louis, Mo., Code § 5.22.020(A) & (B).

In 1989, however, the Missouri Court of Appeals determined that the City of Kansas City could not levy its municipal earnings tax upon sums paid at the direction of an employee of the Board of Police Commissioners to the Kansas City Police Department Deferred Compensation Plan. *Whipple v. City of Kansas City*, 779 S.W.2d 610 (Mo. Ct. App. 1989). The *Whipple* court reasoned that, because all sums paid to the Deferred Compensation Plan were exchanged for nothing more than "the unsecured promise of the board to pay the employee whatever balance may be in the account at the employee's retirement or separation from the department," *id.* at 611, such sums were not subject to the municipal earnings tax. *Id.* at 613-14. As the court explained: "The city's position that it may extract a tax from employees based on sums they have not received and may never receive is simply untenable." *Id.* at 614.

---

[3] The Thrift Savings Fund also contains other assets such as contributions made by government agencies that employ the federal workers who participate in the TSP  5 U S C  § 8437(b), *see also id.* § 8479(b)

The *Whipple* court, of course, did not address the validity of municipal earnings taxes imposed upon federal employees who partake of the TSP program. Nevertheless, as your letter points out, under the Supreme Court's ruling in *Davis v. Michigan Department of the Treasury*, 489 U.S. 803 (1989), neither states nor municipalities may differentiate between similarly situated federal employees and state or municipal employees in levying state and local taxes. This restriction flows from the constitutional principle of intergovernmental tax immunity and 4 U.S.C. § 111, which states:

> The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . by a duly constituted taxing authority having jurisdiction, *if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.*

4 U.S.C. § 111 (emphasis added). Interpreting this provision in conjunction with the constitutional conception of intergovernmental tax immunity, *see Davis*, 489 U.S. at 813 (characterizing § 111 and modern constitutional doctrine as "coextensive"), the Supreme Court concluded that intergovernmental tax immunity precludes taxation of federal employees "to the extent that such taxation discriminates on account of the source of the compensation." *Id.* at 810. Applying this rule, the Court held that the State of Michigan could not levy an income tax on retirement benefits paid by the federal government while exempting from taxation retirement benefits paid by the state or its political subdivisions. *Id.* at 814-17. Simply put, the Michigan taxation scheme failed because the inconsistent treatment of state and federal employees was not "directly related to, and justified by, 'significant differences between the two classes.'" *Id.* at 816 (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 383 (1960)).

The Supreme Court applied this understanding of the rule of intergovernmental tax immunity in *Barker v. Kansas*, 503 U.S. 594 (1992), where the Court struck down a Kansas scheme that levied taxes on the benefits paid to military retirees but exempted benefits received by retired state and local government employees. Again, the Court emphasized that it "evaluate[s] a state tax that is alleged to discriminate against federal employees in favor of state employees by inquiring 'whether the inconsistent tax treatment is directly related to, and justified by, "significant differences between the two classes."'" *Id.* at 598 (quoting *Davis*, 489 U.S. at 816) (quoting *Philips Chem.*, 361 U.S. at 383). Not surprisingly, the Court invalidated the Kansas taxation scheme by applying this basic principle. *Id.* at 598-605.

## III.

The issue raised by your inquiry must be resolved through the application of the principle set forth in *Davis* and *Barker*. By judicial decision, the sums paid to the Missouri Police Department Deferred Compensation Fund are exempt from the Kansas City earnings tax. *See Whipple*, 779 S.W2d 610 (Mo. Ct. App. 1989). In contrast, the voluntary TSP contributions of federal employees historically have been subject to the Kansas City earnings tax. The validity of the taxation of voluntary TSP contributions turns on "whether the inconsistent tax treatment is directly related to, and justified by, 'significant differences between the two classes.'" *Davis*, 489 U.S. at 816 (quoting *Philips Chem.*, 361 U.S. at 383); *accord Barker*, 503 U.S. at 598. We believe that a significant difference between voluntary TSP contributions and sums paid to the Missouri Police Department Deferred Compensation Fund justifies the existing disparity in tax treatment.

Voluntary TSP contributions are held in trust for the benefit of the employees who participate in the plan. *See* 5 U.S.C. § 8437(g). The legal nature of the Thrift Savings Fund creates a legitimate and enforceable expectation of the return of contributions to TSP participants. Indeed, this is precisely what Congress anticipated. *See* S. Rep. No. 99-166, at 14 (1985), *reprinted in* 1986 U.S.C.C.A.N. 1405, 1419 ("Employees are immediately vested in their own contributions and earnings attributable to them. . . . At retirement an employee may withdraw the account balance either in a lump sum . . . or in installments."); H.R. Conf. Rep. No. 99-606, at 134-135 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1508, 1517-1518 (adopting provision for full and immediate vesting of both employer and employee contributions, and discussing options for withdrawal of contributions).

In comparison, the return of any sums paid to the deferred compensation plan at issue in *Whipple* is essentially speculative. As the *Whipple* court explained:

> [A participating employee's] account reflects the current status of the employee's prospective benefits, but the account is the property of the board . . . . The sole interest of the employee in his deferred compensation is the unsecured promise of the board to pay the employee whatever balance may be in the account at the employee's retirement or separation from the department.

*Whipple*, 779 S.W.2d at 611. Indeed, the deferred compensation plan included language that qualified each participant's claim to any sums paid at a participant's direction to the plan:

> All amounts of Compensation deferred under this Plan, all property and rights which may be purchased by the Employer with such amounts and all income attributable to such amounts, property or

> rights to property shall remain the sole property and rights of the Employer without being restricted by the provisions of this Plan subject only to the claims of the Employer's general creditors. The obligation of the Employer under this Plan is purely contractual and shall not be funded or secured in any way.

*Id.* Based on these provisions, the court of appeals concluded that an "employee has no guarantee that any payment of deferred compensation will be made." *Id.* at 612.

The provisions of the deferred compensation plan discussed in *Whipple,* which significantly qualified the claims of participants to payments made at their direction, render sums paid to the plan in *Whipple* readily distinguishable from voluntary TSP contributions. Thus, Kansas City and St. Louis cannot be forbidden, by either the constitutional principle of intergovernmental tax immunity or by 4 U.S.C. § 111, to impose a municipal earnings tax upon voluntary TSP contributions. Unless a Missouri court rules that earnings taxes cannot be levied upon voluntary TSP contributions as a matter of state law, the Kansas City and St. Louis earnings taxes should be withheld and remitted for voluntary TSP contributions.[4]

## IV.

Your request for an opinion on the validity of earnings taxes levied by Missouri municipalities necessitated a comparison of voluntary TSP contributions and sums paid to a specific deferred compensation plan that are exempted, by a judicial ruling, from the earnings tax. Our analysis turns upon a material distinction between the two types of contributions. We find, based upon this material distinction, that intergovernmental tax immunity does not foreclose the imposition of an earnings

---

[4] Your inquiry assumes that voluntary TSP contributions "are not included in an employee's gross wages for Federal income tax purposes " This fact, however, does not affect our analysis of the intergovernmental tax immunity issue As a general matter, states and municipalities may tax earnings that are exempt from taxation under the Internal Revenue Code, and the earnings taxes levied by Kansas City and St. Louis apparently sweep more broadly than the federal income tax laws *See Whipple,* 779 S W.2d at 613 n 3

To be sure, a TSP participant could challenge, under Missouri law, the application of the earnings tax to TSP contributions by filing a declaratory judgment action in state court. Indeed, the *Whipple* decision strongly suggests that such an action would be successful. *Id.* at 613-14 & n 3. As the *Whipple* court observed, a Missouri statute proscribes the taxation of any payment made to a deferred compensation program "'to the same extent as it is exempt from income tax imposed by the United States.'" *Id.* at 613 (quoting and interpreting Mo. Ann Stat. § 105.900.2) This statute, when read in conjunction with limitations imposed by Missouri law upon the taxing authority of municipalities, prompted the *Whipple* court to opine that Kansas City lacked the capacity under state law to tax such payments as earnings. *Id.* at 613-14 & n 3

This argument might well be persuasive in a declaratory judgment action in a Missouri court, but it is not the province of this Office to issue authoritative interpretations of state laws and municipal codes. *See* Letter for Hon Wendell H. Ford from Mary C. Lawton at 3 (Apr. 5, 1976) (explaining that "we of course are not in a position to give an authoritative interpretation of State law"); *cf. Pennhurst State Sch. & Hosp. v Halderman,* 465 U S. 89, 106 (1984) (noting impropriety of federal courts instructing state officials "on how to conform their conduct to state law"). Hence, our opinion does not address the validity of the municipal earnings taxes as a matter of Missouri law.

tax by the Missouri municipalities. Therefore, we anticipate that the NFC will withhold and remit earnings taxes for TSP contributions.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*