**FIRST NATIONAL BANK OF ANDREWS**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver of Permian Bank, Odessa, Texas.**

No. MO–88–CA–274.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Jan. 17, 1989.

---

**266**

Susan Ann Richardson, Cotton, Bledsoe, Tighe & Dawson, Midland, Tex., for plaintiff.

Janine O. Hill, Midland, Tex., for intervenor-plaintiff.

Don D. Bush, Tex., Robert J. Clary, Johnson, Bromberg & Leeds, Dallas, Tex., for defendant.

William Franklin Carroll, Bruce L. Collins, III, John Mitchell Nevins, Baker, Mills & Glast, P.C., Dallas, Tex., for Federal Deposit Ins. Corp., as Receiver of First Republic Bank Midland, N.A. amicus.

Stephen Gillham Tipps, Baker & Botts, Houston, Tex., for NCNB Texas Nat. Bank amicus.

## MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

BUNTON, Chief Judge.

BEFORE THIS COURT are the Cross Motions for Summary Judgment of the parties in the above-numbered cause. This suit has attracted prolific and fine briefing, two Interveners, and the general consternation of everyone connected with the dispute. The issues are novel. Upon review of the Cross Motions for Summary Judgment, arguments of counsel, supporting affidavits, and deposition testimony offered in support of the pleadings, the Court is of the opinion that the parties to the underlying contract had the power to transfer the interests which were the subject of the contract; that the Contract which memorialized the agreement was valid; and that the Plaintiff did not assume the liabilities associated with the failed bank's operation of the trust department.

*Demise of the Permian State Bank*

The Texas Banking Commissioner, on July 18, 1986, appointed the Federal Deposit Insurance Corporation liquidator of the Permian Bank, a state bank incorporated pursuant to Article 342–301, Texas Revised Civil Statutes (Vernon). The deposits of the Permian Bank were insured by the Federal Deposit Insurance Corporation at the time of the declaration of insolvency. The Commissioner appointed the FDIC as liquidator pursuant to the authority of Article 489b, Tex.Rev.Civ.Stat.

The next day, by Order, ("July 19 General Order") the 161st Judicial District Court of Ector County, Texas granted the FDIC's petition to issue a general order permitting sale of assets, payment of expenses of administration and sale or compounding of all debts of the Bank. The entry of such a general order is common practice for a supervising Court to aid in the transfer of assets and vesting of title to the assets of the failed institution.

It appears that one of the first tasks that the FDIC undertook was to secure a successor trustee for the trusts managed by the Permian Bank Trust Department. The summary judgment evidence establishes that no inquiry was made into whether there was potential legal liability associated with the trusts which may have been visited upon Permian Bank had it survived. However, it should be noted that to this day, no party has demonstrated to the Court an *actual*, matured liability; no suits have been brought by beneficiaries of trusts under state law for alleged wrongdoing of the former trustee.

With regard to the trust department, the FDIC merely offered it for sale to the highest bidder. One can imagine the compelling logic from the point of view of the liquidator: (1) one of the cornerstones of a successful bank is the operations of the trust department for the income the trusts generate directly and indirectly for the bank; (2) the Permian Bank would not survive the insolvency intact or be subsumed

into one successor institution; (3) the trusts required a fiduciary to fulfill the duties of a trustee; and accordingly, (4) the trust department should be sold as any other "asset" to the highest bidder.

On July 22, 1986, First National Bank Andrews ("FNB Andrews") bid $25,001.00 for the "trust business" and was declared the successful bidder. On the next day, FNB Andrews and the FDIC memorialized their agreement with a Purchase and Assumption Contract which recites the understanding of the parties that the FDIC has authority to transfer the fiduciary relationships of the failed bank "to the fullest extent permitted by law." The agreement purports to vest in the purchaser, FNB Andrews, all of the "property, rights, powers and franchises of the [Permian] Bank as fiduciary." The record does not demonstrate that the agreement which is the subject of this suit was submitted to the supervising State Court for approval.

It is clear from the language of the agreement that the parties understood that they were 'trafficking' in fiduciary relationships:

"Assuming Bank shall assume all of the obligations and duties of the Bank as a fiduciary and succeed the Bank in all fiduciary relationships as fully and to the same extent as if Assuming Bank had originally acquired, incurred, or entered into such relationships, rights, powers, franchises, debts, liabilities, obligations and duties in its own right, except as otherwise provided herein". Purchase and Assumption Agreement.

It is equally clear that there was at least a nodding acquaintance with the Texas Trust Act. The agreement recited that FNB Andrews would give notice,

"to each settlor, beneficiary and other party who is entitled to notice of its assumption of the Trust Business of the Bank by mailing to each such party, a notice of assumption, and by advertising in a newspaper of general circulation in the county in which the Bank was located."

This statement of the relevant, undisputed facts concludes by noting that on August 14, 1986, the supervising State Court modified the Original Order to lift the obligation to secure court approval for sales of the assets of the Permian Bank:

"The Receiver may, without further order of this court, do and perform any and all things concerning the liquidation of the assets of Permian Bank, Odessa, Texas, authorized by (Article 489b) and Article 342, Sections 801–816, of the Revised Civil Statutes of the State of Texas (1925), and not in conflict with this Order."

### The Journey to this Court

The First National Bank of Andrews brought suit in State Court seeking a declaratory finding that the Purchase and Assumption Agreement is void and unenforceable in that it violates the Texas Trust Law statutory and casuistic scheme, and that it was not properly approved by the supervising Court. In the alternative, FNB Andrews asks the Court to find that the agreement is void for failure of consideration. Should those points fail, FNB Andrews requests the Court to interpret the contract narrowly to limit the subject of the transfer to those viable trusts shorn of actual or potential liability to beneficiaries for prior acts of the failed Permian Bank.

The FDIC in its Corporate Capacity intervened on the 14th of November, 1988 and on the same day removed the cause to this Court under the authority of 12 U.S.C.Sec. 1819.

### Discussion

The parties have effectively focused the relevant facts for the Court to aid in an early determination of the applicable law. The Supreme Court reinforced the appropriateness of resort to Summary Judgment to secure a just, speedy and inexpensive determination of actions. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Ambiguous contracts where parties' intent presents a question of fact are generally not appropriate matters for summary judgment determination. *Fischbach and*

*Moore, Inc. v. Cajun Electric Power Cooperative, Inc.*, 799 F.2d 194, 197 (5th Cir. 1986). However, the contract itself is not ambiguous under the correct interpretation of the applicable law; rather, the ambiguity involves seemingly inconsistent state statutory schemes.[1] Nor is there a significant dispute as to motivation and intent of the parties which may preclude imposition of summary judgment. See e.g. *Honore v. Douglas*, 833 F.2d 565, 569 (5th Cir.1987); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 641 (5th Cir.1985). The Court turns first to a discussion of the applicable statutory authority to determine whether state law would prevent the transaction from occurring in the manner attempted by the parties.

Two separate portions of the Texas Civil Code are prominent. The Texas Trust Code, V.T.C.A., Property Code, Section 113.083(a) provides for the orderly transfer of the office of the Trustee upon the death, resignation, incapacity, or removal of a sole or surviving trustee.[2] The Banking Code purports to provide a comprehensive scheme for the liquidation of state banks.[3] Plaintiff urges the Court to give prominence to the Texas Trust Act and declare the transaction void. Defendant emphasizes the overarching mechanisms set out in state banking law to deal efficiently with the assets of a failed bank, safeguard the deposits of the public and encourage stability throughout the banking community.

▉ It is a close question; however, a comparison of the relevant provisions of the Codes governing trusts and the banking system requires the Court to find that the Banking Code preempts the Texas Trust Code in a limited but dispositive manner concerning the issues which are the subject of this suit. By so finding, the Court recognizes that Texas law provides for a *limited* intrusion of the banking liquidation procedures into matters of trust law. The findings of the Court this day that the provisions of the Trust Code with respect to the appointment of a successor trustee have been set aside in limited form by the controlling provisions of the Banking Code do not prohibit a State District Court of competent jurisdiction to act under Sec. 113.082 to remove a trustee.[4] Nor does this Court's application of State law infringe upon the jurisdiction scheme set out in the Trust Code.[5]

1. Though the Court notes that there may be an unsettled question of state law implicated in the pleadings, the doctrine of federal court abstention is not applicable. There is no indication that the FDIC, a regular player in these matters, will refrain from invoking its removal power and thus, state courts may not have a chance to settle the underlying state law question. Cf. *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

2. Though the Texas legislature enacted the Texas Trust Code in 1983, (replacing the former Texas Trust Act), the Trust Code does not make fundamental changes in Texas trust law. The legislation updated the Texas Trust Act, and codified existing statutes dealing with trust law from elsewhere in State statutes.

It is noteworthy that the Trust Code, on its own terms, is susceptible of being set aside. For example, a central principle of the Trust Code is that it applies unless contrary provision in the trust instrument dictates otherwise. Sec. 111.002(a) (Of course certain self-dealing rules imposed by the Trust Code cannot be waived with respect to corporate trustees; a matter not relevant here.)

Similarly, the Trust Code provides for appointment of a successor trustee by the Court. Sec. 113.083. Though the Plaintiffs would urge the strict application of this provision, it bears noting at the minimum that Texas Trust Law is not a pristine glen untouched by outside forces.

3. Art. 342–101, Texas Annotated Civil Statutes provides in relevant part:

"This Code provides a complete system of laws governing the organization, operation, supervision and liquidation of state banks...."

4. Where the trust instrument does not expressly provide that a trustee may be removed if certain conditions are satisfied, any interested party can petition the District Court to remove a trustee who has materially violated or attempted to violate a term of the trust and the violation or attempted violation results in a material financial loss to the trust, or for other cause. Sec. 113.082, Texas Trust Code. See also *Akin v. Dahl*, 661 S.W.2d 911 (Tex.1983) court must find that the trustee's hostility will affect his performance in office in order to remove the trustee.

5. Under the Trust Code, the State District Court has original exclusive jurisdiction, with an exception not relevant here, over all proceedings concerning trusts. Ch. 115, Texas Trust Code.

The business of banking touches many aspects of the community. Trust departments are as common a feature as loan departments at most banks. Similarly, currency exchange patterns have required sophisticated services for transfer of funds to banks down the street and across the globe. Safety deposit boxes are similar to trust departments in that most banks are expected to offer these services to persons who borrow and safeguard their funds at the bank. When a bank becomes insolvent, ancillary services are not the cause of the problem. However, the entire banking operation is considered as a whole for the purpose of the designation of an entity to manage the bank. The Texas legislature designated that "[t]he methods of liquidation of state banks as provided in this Code shall be exclusive and no state bank shall make an assignment for the benefit of creditors...." V.T.C.S. Art. 342–801.[6]

That same Banking Code, exclusive in its ambition to handle all matters in the liquidation of the Bank, designates the Federal Deposit Insurance Corporation as the liquidator of any "banking institution" and posits in it rather broad power:

> "[I]f the [Federal Deposit Insurance] [C]orporation accepts said appointment, the corporation shall have and possess all powers and privileges provided by the laws of this state with respect to a receiver or liquidator respectively of a banking institution, its depositors and other creditors...." V.T.C.S. art. 489b(3).

Defendant correctly points out that the Banking Code includes within the term "banking institution" a variety of entities which encompass a broad spectrum of ancillary activities to the central business of extending credit and holding deposits: A banking institution is any "bank, trust company, bank and trust company, stock savings bank or mutual savings bank, which is now or may hereafter be organized under the laws of this state." V.T.C.S. art. 489b(1).

Accordingly, the Court specifically rejects the notion that a correct application of Texas law would confine the powers of the liquidator to those powers of the banking institution which it is liquidating. To argue that 'since a solvent bank cannot endeavor to sell its trust department without State District Court oversight of each trust under the provisions of the Trust Code the FDIC acting as liquidator is similarly constrained' is to ignore the extraordinary circumstances of a liquidation of a bank and the extraordinary powers vested in the FDIC by the Banking Code.

It is not necessary to force the activities (and revenue generating opportunities) of a trust department into the definition of the term "asset" in order to conclude that the FDIC has power to manage and transfer the trust department.[7]

Article 342–812 of the Texas Banking Code gives the FDIC, when designated by the Commissioner to act as liquidator of a failed institution, certain enumerated powers including, to "enter into any other kind or character of contract or agreement on behalf of such bank which he deems necessary or proper to the management, conservation or liquidation of its assets...." Nothing in this language or the referenced section *requires* that each act be in reference to some asset to be valid. Such a

---

**6.** In *Robertson v. State,* 406 S.W.2d 90, 93–94 (Tex.Civ.App.—Ft. Worth, 1966, writ ref'd n.r.e.) the Court ruled out a construction of the Banking Code which allowed a grafting of other elements of Texas general law.

Certainly, this fact of exclusive jurisdiction over trusts does not deprive this Court of jurisdiction of the cause removed from State Court. Nor does it, on its terms, prohibit the application of the Banking Code to the steps made to transfer the trusts under the circumstances of liquidation of a state bank by the FDIC acting under the appointed authority of the Commissioner.

**7.** Indeed, Art. 342–1102 of the Banking Code designates the liquidation procedures of the banking code to apply to the liquidation of trust companies. Sec. 489b(3), discussed *supra,* gives the FDIC power to act as receiver of a trust company within the term "banking institution." The inclusion of trust companies in this definition may not be an analytically neat fit but it is not the only time that legislative bodies have forced round pegs into square holes.

direct relationship to the asset is not necessary; the act need only relate to the affairs of the institution to be within the scope of the liquidator's authority.

The analysis to this point supports the view that the trust department was within the management authority of the FDIC. It is axiomatic that the liquidator has the power to take steps to transfer the management responsibility for the trust. To the extent that there is title, it vests in the FDIC. To the extent that the FDIC becomes possessor of the business and property "of every kind and nature", it is the successor "without the execution of any instruments of conveyance, assignment, transfer or endorsement." Art. 489b, Sec. 7.

It is not necessary to consider the interaction of the Texas Trust Act and the Banking Code and whether there is a different conclusion should the FDIC transfer the management of the trust department to a private person without bond or security. The summary judgment evidence supports the view that the liquidators intended to be somewhat discriminating and choose only a solvent banking institution. The only bidder for the trust department was FNB–Andrews.

Under this reasoning, it is not necessary to find that the FDIC received in the agreement the *opportunity* to succeed to the trustee position. The preempting provisions of the Banking Code make the FNB–Andrews the successor trustee to all trusts except where the terms of a particular trust managed by the insolvent Bank dictated a contrary result.[8]

---

**8.** The Purchase and Assumption Agreement between FDIC and FNB–Andrews contemplated that the provisions of a particular trust relating to the trustee should control over the terms of the agreement between the Receiver and the bank:

"Any reference to the bank as fiduciary in any capacity, contained in any contract, will or document, whether executed or taking effect before or after the assumption of these fiduciary relationships by assuming bank, shall be considered a reference to assuming bank if not inconsistent with the other provisions of the contract or trust agreement."

*Alternate Challenges to the Validity Of the Contract*

■ Plaintiff argues that the transfer was made contrary to the authority of the supervising court. The argument is not meritorious. Though the July 19, 1986 General Order qualified its grant of authority to the FDIC to sell any asset of Permian at fair market value[9], the infirmity was removed on August 14, 1986, a date less than 30 days after the date of the Purchase and Assumption Agreement which is the subject of this case.

■ The trust agreement was supported by adequate consideration. Under applicable law, the burden of proving lack of consideration for the execution of a written agreement is on the party asserting it. *Richardson v. Office Buildings of Houston*, 704 S.W.2d 373, 375 (Tex.App.—Houston [14th Dist.] 1985, no writ). There is no summary judgment evidence, under the applicable law, for movant FNB–Andrews to prevail on this issue at this time.[10]

*FNB–Andrews Takes Free of Liabilities*

In response to FNB–Andrews' Motion for Summary Judgment as to the construction of the agreement in a manner to prevent FNB from succeeding to the liabilities of the failed institution with regard to the trust, the FDIC relies on the language of the agreement:

"The Assuming Bank takes the Trust Business 'as is' with all faults and without warranty or right of indemnification of any kind whatsoever from the Receiver."

Summary Judgment evidence establishes that the officers of the FDIC had no idea

---

**9.** "[T]he sale of any asset with a fair market value in excess of Ten Thousand Dollars ($10,-000) shall be subject to confirmation by this court within 30 days of any such sale." July 19 General Order.

**10.** The Court notes that the burden is *very* high at the trial on the merits to prevail on the issue of lack of consideration under the circumstances in this cause. A written instrument is prima facie proof of consideration. *Richardson, supra.*

whether there were liabilities for any wrong act, omission, or breach of a fiduciary duty by Permian Bank with respect to the trusts. No inquiry was made of any kind. The course of dealing between the parties indicated that the subject of the agreement was the management of the trusts; the substitution of a fiduciary for the FDIC acting as liquidator.

The Banking Code is silent with respect to the status of the succeeding institution for the liabilities *of this nature.*[11] Though a bank may purchase loans from the FDIC at a discounted rate, the defects in the loans are capable of being known and in fact specifically assessed by the FDIC and the purchasing institution. By its nature liability by a trustee for breach of a fiduciary duty is not amenable to ready calculation. The amount of the damage is not difficult to calculate once the scope of the liability has been determined. Under Texas law, the general principle is that there is no liability on the part of the successor trustee for breaches of duty by the former trustee.

Section 114.002 of the Trust Code states that a successor trustee is not liable for any breach of trust by the predecessor trustee unless he knows or should know of a situation constituting a breach of trust committed by the predecessor, and the successor trustee improperly permits it to continue, fails to make a reasonable effort to compel the predecessor to deliver the trust property, or fails to make a reasonable effort to compel a redress for the breach of trust.

There is no evidence in this cause now or likely ever to be which is of the sort that Section 114.002 requires to attach liability on the successor trustee. The Purchase and Assumption Agreement does not directly speak to successor liability and the dealings of the parties does not raise even the implication that the matter of liability for the acts of Permian Bank was within the scope of the agreement.[12]

There is no reason as a matter of law for this Court to wait until a later date to declare that the contract which is the subject of this suit does not place on FNB Andrews liabilities for the acts of the insolvent institution.

The Court directs the parties to examine the underlying dispute to determine whether there are matters left unresolved after the Court's Order on Cross Motions for Summary Judgment and respond within 10 days enumerating those issues which remain for trial. No party is precluded from moving for summary judgment on any remaining issue.

For the foregoing reasons, the Court is of the opinion that Summary Declaratory Judgment should be granted for FDIC–Receiver on the issues of validity of the contract and the power of the FDIC to convey the subject matter of the contract.

Summary Judgment is appropriate for the Plaintiff on the issue of whether the contract transfers the liabilities, if any, associated with the previous trustee's performance of its fiduciary duty. Thus, in

---

11. Plaintiff points to the analogous situation whereby a party which seeks to indemnify another for the consequences of its own negligence must express that intent in specific terms. See *Ethyl Corporation v. Daniel Construction Company* 725 S.W.2d 705 (Tex.1987). The rule of *Ethyl Corporation* represents the view of Texas Courts that ambiguous contractual language will be construed in favor of the person sought to be held to indemnification.

12. The Court notes that the public policy interests stated in *D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) have been extended to shield the FDIC from liability for the misconduct of failed banks. See *In the Matter of CTS Truss, Inc. v. Federal Deposit*

*Insurance Corporation,* 859 F.2d 357 (5th Cir. 1988).

The Supreme Court recently endorsed the *D'Oench Duhme* doctrine in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) wherein even the untruthfulness of a warranted fact—fraud—was discounted as a valid defense against payment on the underlying indebtedness.

The *D'Oench Duhme* doctrine appears to apply where the FDIC is suing in its capacity as receiver of state-chartered bank. See *FDIC v. Miller,* 671 F.Supp. 1286 (D.Kan.1987). In sum, it would be absurd to argue that the good faith taker from a fully shielded party should revive liabilities which were once extinguished.

this case, the sins of the father are not visited on the adopted son.[13]

In all other respects not specifically discussed or resolved by application of the principles developed herein, the party's Motions for Summary Judgment are denied.

---

**13.** Cf. Ezekiel, 18:19; not in accord, Exodus, 20:5.