**NCNB TEXAS NATIONAL BANK and the Federal Deposit Insurance Corporation, in its Corporate Capacity and as Receiver of Republicbank Midland**

v.

**Candice Beth COWDEN and Billi Terresa Cowden.**

**No. MO–88–CA–301.**

United States District Court,
W.D. Texas,
Midland–Odessa Division.

April 19, 1989.

Stephen Gillham Tipps, Baker & Botts, Houston, Tex., for Texas Nat. Bank.

William Franklin Carroll, Baker, Mills & Glast, P.C., Dallas, Tex., for Federal Deposit Ins. Corp.

Marc Lynn Skeen, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, Tex., for Candice Beth Cowden and Billi Terresa Cowden.

Harris E. Kerr, amicus curiae.

## MEMORANDUM OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BUNTON, Chief Judge.

BEFORE THIS COURT are the Cross-Motions for Summary Judgment of the parties in the above-numbered cause. The issue for determination on summary judgment is dispositive of the entire cause: Whether NCNB is the successor trustee to certain trusts for the benefit of Candice Beth Cowden and Billi Terresa Cowden by virtue of the transfer by the FDIC on July 29, 1988 of the trust department of First RepublicBank Midland to NCNB.

The Plaintiffs, FDIC, FDIC–Receiver, and NCNB Texas National Bank, filed suit on November 30, 1988 in this Court for a declaratory judgment that the transfer was valid. The Defendants, beneficiaries of trusts once administered by First Republic-Bank Midland, deny that FDIC–Receiver is empowered under federal or state law to transfer the fiduciary appointment of the insolvent bank to a successor bank. The Cowdens contend that a successor trustee must be designated by a Texas Court of competent jurisdiction after application by the successor, notice to the beneficiaries and opportunity to respond.

Though this suit involves six fiduciary relationships[1], it should be noted that 26,000 fiduciary positions[2] were involved in transfers from First RepublicBank entities across Texas on July 29, 1988. To put the findings of the Court into perspective, a short summary of the events of July 1988 is necessary. By the last week of July, 1988, bank examiners determined in secret

---

1. On July 29, 1988 First RepublicBank Midland was serving as Independent Executor of the Estate of Billy Tom Cowden by designation in his will dated 1975, a date when confidence in First RepublicBank's predecessor First National Bank was as high as the price for a barrel of West Texas crude.

In addition, on July 29, 1988 First Republic-Bank Midland was serving as trustee of the following trusts:

   a. The B.T. Cowden Trust to benefit Candice Beth Cowden ("B.T. Cowden Trust No. 1251") and the B.T. Cowden Trust to benefit Billi Terresa Cowden ("B.T. Cowden Trust No. 1252").

   b. The Candice Beth Cowden Trust ("Candi Trust No. 1090").

   c. The Billi Terresa Cowden Trust ("Terre Trust No. 1244").

   d. The B.T. Cowden Testamentary Trust.

2. These fiduciary positions include approximately 1,000 appointments as executor, administrator, or guardian of estates involved in proceedings pending in 96 Texas Courts, over 9,000 corporate and employee benefit trusts, and more than 17,000 other trusts similar to the Cowden trusts. The assets of the trusts are valued at approximately $50 billion and produce a revenue stream for the fiduciary institution of nearly $100 million a year.

that the banks which were directly or indirectly owned by the First RepublicBank Corporation in Texas were near insolvency. Accordingly, on July 27, 1988, the FDIC established a "bridge bank" pursuant to the provisions of 12 U.S.C. Sec. 1821(i) to continue the operations of the First RepublicBanks from the date they were declared insolvent. On its birthdate the bridge bank was first named JRB Bank, National Association ("JRB"), however, later, it became NCNB Texas. At the close of business on July 29, 1988 the Office of the Comptroller of the Currency declared First RepublicBank Midland insolvent and appointed FDIC Receiver of First RepublicBank Midland. Simultaneously, 39 other banking institutions across Texas held directly or indirectly by First RepublicBank Corporation were declared insolvent and put in the hands of FDIC–Receiver.

The same day, FDIC–Receiver transferred to the bridge bank by contracts known as purchase and assumption agreements certain assets, deposits, and liabilities. The purchase and assumption agreement relevant to the Cowden trusts included a provision which purported to transfer the trust business of the First RepublicBank Midland to the bridge bank and appointed the bridge bank trustee with full trust powers and duties under Texas law.[3] There is no dispute among the parties that these agreements were completed by the parties, approved by the Comptroller of the Currency and then approved by this Court on July 29, 1988.[4]

Clearly, absent the inclusion of the trust business connected with the various banks in the proposed transfer, NCNB's bid to acquire the group of banks known as the First RepublicBank system would have been much lower. This conclusion is demonstrated in the affidavits of various NCNB bank officers submitted in support of the Motion for Summary Judgment. NCNB's bid for the family of banks and entire banking business was approved on July 29, 1988.[5]

Up to this point, the stage is set with a cast of characters and historical events of great magnitude but no real clash of interests. This last ingredient, a real, live controversy (which exists at all stages of review) occurred when the Cowden beneficiaries, under rights set out in the trust instruments, gave notice of election to terminate the trusts to First RepublicBank Midland in the weeks prior to First RepublicBank's insolvency.

NCNB offered to comply with the requests made by the Cowdens, terminate the trusts, transfer the properties by warranty deeds, give an accounting and make distributions of the assets. However, the Cowdens refused to accept the transfers contending that NCNB could not give good title to the assets because it is not the

3. Section 4.7 of the purchase and assumption agreement contained these provisions concerning First RepublicBank Midland's trust business:

   "*Agreement with Respect to Trust Business.* The trust business of [First RepublicBank Midland] is hereby transferred to [JRB] effective as of Bank Closing:
   (a) [JRB] shall, without further transfer, substitution, act or deed, to the full extent permitted by law, succeed to the rights, obligations, properties, assets, investments, deposits, agreements and trusts of [First RepublicBank Midland] under (i) trusts, executorships, administrations, guardianships, agencies, and (ii) other fiduciary or representative capacities, all to the same extent as though [JRB] had originally assumed the same; ....
   (b) [JRB] shall, to the full extent permitted by law, succeed to, and shall be entitled to take and execute, the appointment to all executorships, trusteeships, guardianships and other

   fiduciary or representative capacities to which [First RepublicBank Midland] is or may be named in wills, whenever probated, or to which [First RepublicBank Midland] is or may be named or appointed by any other instrument."

4. FDIC–Receiver's petition filed in this Court, MO–88–CA–173 on July 29, 1988 for approval of the purchase and assumption agreement was approved by the Honorable Harry Lee Hudspeth the same day.

5. Under the terms of the NCNB acquisition, NCNB invested $210,000,000 in the bridge bank on November 22, 1988 and acquired all 2,000,000 shares of common stock with voting rights; the equivalent of a 20 percent ownership interest in the bridge bank. NCNB Texas has an option to acquire the remaining ownership interest over the next five years.

successor trustee.[6] It is this conflict which serves as the jurisdictional basis of this suit.

The conflict is somewhat novel.[7] The Cowden trust dilemma was handled in a different manner when on October 14, 1983 the Comptroller of the Currency declared the First National Bank of Midland insolvent and First RepublicBank Midland became the trustee on the Cowden trusts. When the previous transfer of trustee duties occurred, First RepublicBank Midland brought separate lawsuits in Texas District Courts for the Cowden trusts and the other trusts covered by the purchase and assumption agreement. In these suits RepublicBank Midland obtained a State Court declaration that it was the successor trustee.[8] When NCNB became the appointed successor to the First Republic-Bank trust department, it chose not to seek recognition of its status in separate State civil proceedings. The Cowdens, possessing equitable title to the properties which made up the *res* of the trust, challenged the NCNB's status as legal title holder of the properties. This suit, brought by NCNB and the Federal Deposit Insurance Corporation, seeks a declaratory judgment that NCNB succeeded to all rights, powers and duties under Texas law as trustee of the Cowden trusts.

### Standard on Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provide for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."

In the case at bar, the parties have stipulated to the material facts and under the controlling legal principles, there are no

---

6. The Cowdens also challenge the status of NCNB Texas as independent executor of the estate of B.T. Cowden absent appointment by a Court of competent jurisdiction. For the purpose of this opinion, the same principles control the application of federal law with respect to the trustee and executor successorship.

7. However, with regard to a state chartered banking institution, this Court, on January 17, 1989 by Memorandum Opinion on Cross Motions for Summary Judgment in *First National Bank of Andrews v. FDIC*, 707 F.Supp. 265 (W.D. Tex.1989) determined that after the demise of a state chartered bank, the FDIC, appointed as liquidator pursuant to state statutory authority, could sell to a successor solvent banking institution the trust department of the failed institution. The successor institution became, under Texas law, the successor trustee to the trusts unless the language of the particular trust explicitly dictated a contrary result.

In so finding, this Court reasoned that the Banking Code preempts the Texas Trust Code in a limited manner; Texas law provides for a *limited* intrusion of the banking liquidation procedures into matters of trust law. Though the State Banking Code required that the provisions of the Trust Code with respect to the appointment of a successor trustee should be set aside in limited form, a State District Court of competent jurisdiction could act under Sec. 113.082 of the Texas Trust Code, V.T.C.A. Property Code, to remove a trustee. Nor did the Court's ruling on the successor trustee of an insolvent banking institution infringe upon the jurisdiction scheme set out in the Trust Code.

The case at bar is novel in that First Republic Bank Midland is a nationally chartered bank and the FDIC–Receiver exercises powers pursuant to federal law authority.

8. However, the Court notes that when the FDIC, as Receiver of First National Bank of Midland, moved for a supplemental Order from this Court to make clear whether the FDIC was authorized to transfer fiduciary appointments, this Court reissued its Order approving the transfer finding,

"that the Assuming Bank has succeeded to all of the rights, obligations, properties, assets, investments, liabilities (if any), deposits, agreements and trusts of the Bank under all trusts, executorships, administrations, guardianships, agencies and under all other fiduciary or representative capacities to the same extent as though the Assuming Bank had originally assumed the same....

"It is further ORDERED, ADJUDGED, AND DECREED that all parties dealing with any of the trusts ... are hereby ordered and directed to deal with the Assuming Bank to the same extent as if the Assuming Bank had been originally named in any such capacity...."

disputes which might affect the outcome of the lawsuit and thereby preclude summary judgment. Cf. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), cert. denied, — U.S. —, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

### Discussion

The Court finds on two alternate grounds that summary judgment is proper with respect to the trusts. First, since this Court determined that with respect to a state chartered bank, where the Commissioner of Banking designates the FDIC Receiver, FDIC may transfer the fiduciary powers to a successor institution, it would be anomalous to conclude that the demise of nationally chartered banking institution did not permit a similar transfer of the fiduciary powers to a successor institution. Second, the United States Congress possesses the power to provide for the uninterrupted continuation of all banking activities of a failed bank and did so in enacting the statutory framework at bar.

Because no appellate court has had the opportunity to review the soundness of this Court's reasoning in *First National Bank of Andrews v. FDIC*, 707 F.Supp. 265 (W.D.Tex.1989)[9] the Court will set out in detail its reasoning in support of the second proposition, that federal law provides for the transfer of the fiduciary powers of the trusts at bar to a successor institution and in a narrow manner, preempts the Texas Trust Code. The analysis will proceed in this fashion: (1) Texas law regarding the transfer of fiduciary powers must yield to federal law in the circumstances where the trustee is a failed banking institution. (2) Congress gave the powers to the FDIC to transfer the fiduciary relationships. (3) The trusts which are the subject of this suit were part of valid purchase and as-

sumption agreements. (4) The trust instruments at issue contain no provision to the contrary.

In so concluding, this Court emphasizes that the preemption of the Texas Trust Code is a narrow and extraordinary event. Only the FDIC acting as Receiver of a failed federally chartered institution transferring the trust relationships to a successor banking institution could validly accomplish a transfer of trustee powers. In all other matters, the Texas Trust Act controls the powers and duties of the trustee and the rights of the beneficiaries.

The Cowdens advance three principal arguments in support of their challenge to the authority of NCNB to exercise the powers of the trustee:

1. The federal statutes at issue could not be construed so as to include trust relationships within its ambit.

2. There is no unique federal interest at stake to require the preemption of Texas law.

3. Texas law prohibits the FDIC appointing NCNB as successor trustee for the trusts which were administered by First RepublicBank.

(1) Texas Trust Law is Preempted By Operation of Federal Law

It is well established that whenever Congress acts within the scope of a delegated power such as that of the Commerce Clause, the Supremacy Clause renders any conflicting state or local law or action void *to the extent that there is a conflict.* Thus, if the federal statute or regulation is valid and the state law conflicts, or requires an inconsistent outcome, the state law is superceded. A related principle is that where a valid federal statute or regulation expressly or impliedly "occupies" the entire field regulated so as to preclude the application of the state law on the same subject matter, the state law is preempted.

**9.** The Court notes that under this Court's reasoning in *First National Bank of Andrews*, to conclude that the FDIC as Receiver of an insolvent national bank has less power than when acting pursuant to State law with respect to an insolvent state chartered institution would run

afoul of the principle that state laws may not discriminate against national banks. Cf. *McCulloch v. Maryland*, 4 Wheat 316, 4 L.Ed. 579 (1819); *Phillips Chem. Co. v. Dumas Indep. School Dist.*, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed. 2d 384 (1960).

The Courts have not determined that any one factor is decisive to determine whether the federal law supersedes or preempts the state law, however, three factors emerge as important: (1) Where the Congress establishes a federal agency or instrumentality to enforce or implement the law, those matters within the agency's jurisdiction are ordinarily deemed preempted. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); cf. *Hillsborough County, Florida v. Automated Medical Labs. Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). (2) Also, the more comprehensive the federal scheme in the area, the more likely that Courts will find preemption by implication. *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456, 459 (5th Cir.1984), *cert. denied,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985). (3) Finally, if the application of the state law places un undue burden on the implementation of the federal regulatory scheme, the state law has been deemed preempted. *California Federal Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

The Supremacy Clause of the United States Constitution, Art. VI, cl. 2 empowers Congress to preempt state law "to the extent it is believed that such action is necessary to achieve its purposes." *City of New York v. FCC,* 486 U.S. 57, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988).

The Texas Trust Code, Section 113.083(a) V.T.C.A. (1988) provides for the orderly transfer of the office of the Trustee upon the death, resignation, incapacity, or removal of a sole or surviving trustee by appointment of the Court.[10] It is this provision which has the capacity to be read in a manner which is inconsistent with federal law providing for the transfer of banking business in the event of bank failure. Though the Cowdens argue that the interest of the State in applying the Texas Trust Code to all fiduciary relationships is great, this argument is misdirected in two ways. First the doctrine of federal Court preemption looks to the interests contained in the federal statutory scheme and not the special concerns of the state. *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed. 2d 664 (1982). Second, the limited finding on the extraordinary circumstances of this cause—the failure of a major banking institution, appointment of the FDIC as Receiver and the transfer of the trust department to a bridge bank entity—that the bridge bank may assume all trustee powers and duties does not eviscerate the Texas Trust Code for all other purposes.

The FDIC has the right to enter into purchase and assumption agreements pursuant to the express language of 12 U.S.C. Sec. 1823(c)(2)(A) (West Supp.1988).[11] The bridge bank is empowered to purchase any asset of the closed bank pursuant to 12 U.S.C. Sec. 1821(i)(1)(C) (West Supp.1988). The FDIC may transfer any assets and liabilities to the bridge bank under the authority of 12 U.S.C. Sec. 1821(i)(3)(A) (West Supp.1988).

Within this statutory scheme, Congress clearly expresses its intent to devise a manner to provide for uninterrupted banking services "to prevent unnecessary hardship or losses to the customers of the closed bank." 12 U.S.C. Sec. 1821(i)(3)(B) (West

---

**10.** Though the Texas legislature enacted the Texas Trust Code in 1983, (replacing the former Texas Trust Act), the Trust Code does not make fundamental changes in Texas trust law. The legislation updated the Texas Trust Act, and codified existing statutes dealing with trust law from elsewhere in State statutes.

**11.** 12 U.S.C. Sec. 1823(c)(2)(A) provides in relevant part:

"In order to facilitate a merger or consolidation of an insured bank ... with an insured institution or the sale of assets of such insured bank and the assumption of such insured bank's liabilities by an insured institution, the corporation is authorized, in its sole discretion and upon such terms and conditions as the Board of Directors may prescribe—
(i) to purchase any such assets or assume any such liabilities.

Supp.1988). This Court takes a broad view of what constitutes the business of banking:

> "The business of banking touches many aspects of the community. Trust departments are as common a feature as loan departments at most banks. Similarly, currency exchange patterns have required sophisticated services for transfer of funds to banks down the street and across the globe. Safety deposit boxes are similar to trust departments in that most banks are expected to offer these services to persons who borrow and safeguard their funds at the bank. When a bank becomes insolvent, ancillary services are not the cause of the problem. However, the entire banking operation is considered as a whole for the purpose of the designation of an entity to manage the bank." Memorandum Opinion, *First National Bank of Andrews v. FDIC*, 707 F.Supp. 265 (W.D.Tex.1989).

A bank system shorn of the trust department is of far less value to a successor bank and would impose significant burdens on both FDIC and the receiving institution of the insolvent bank's assets. Trust departments commonly share space, personnel, and accounting resources with the banking institution. The disentanglement of the business into analytically neat categories of "banking," and thus transferable, and "fiduciary," and thus nontransferable would be a significant, and material impediment to the transfer of the bank. The direct result will be to restrict FDIC's ability to transfer assets and cause losses to the potential recovery for the insurance fund.

### (2) Congress Authorized the FDIC to Transfer Fiduciary Powers to NCNB.

Under the heading of preemption, the Court discussed the explicit grant of authority to the FDIC and will not repeat the discussion. However, it should be noted that the FDIC is authorized to take any action necessary to effectuate the purpose of the federal policy and of the Federal Deposit Insurance Act to achieve stability in the banking community for the sake of the nation's economy. 12 U.S.C. Sec. 1819. This Court specifically finds that Congress enacted a comprehensive scheme to transfer the entire banking business in the event of insolvency. This extraordinary event has grave implications for the economy in the bank's own community, the entire bank system and the bank insurance fund. Congress authorizes the Receiver to act swiftly with respect to all aspects of the banking business.[12]

By this reasoning, it is not necessary to go too far down the path of judicial creation of a federal "common law" and determine whether a body of federal common law operating in this area displaces state law.[13] The fallback position of the FDIC is that a federal common law authorizes the transfer of trust powers to NCNB. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Should such reasoning be necessary, this Court finds that the strict application of the Texas Trust Code provision for appointment of successor trustee frustrates specific federal objectives. Further, the intrusion into the administration of the Texas Trust Code is narrow and founded on an

---

**12.** The Court specifically declines to narrowly interpret the word "asset" in 12 U.S.C. Sec. 1821(i)(3)(A) in a manner which would read out of the statute trust relationships. Such a finding would require adding the words "balance sheet" or "tangible" into the statute and speculate about Congress' intent as to the meaning of "asset" when the statute itself is unambiguous. The statute authorizes the transfer of "*any*" assets."

**13.** This Court is loathe to open the door to a nebulous federal common law with respect to the maintenance of the banking insurance trust fund. The rule of *D'Oench Duhme & Co. v.*

*FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C. 1823(e) are already stout intrusions into State law governing liability on lending instruments. The Court heretofore has refused to apply a federal common law to matters relating to FDIC's disposition of collateral. If a finding that principles of federal common law is necessary to accomplish the purposes of Congress' enactment of the federal bridge bank mechanism to provide uninterrupted continuation bank activities, the intrusion of federal common law would be narrow and extraordinary for the reasons set forth in section (1), above.

extraordinary event. Finally, the importance of administering a national banking insurance system provides the third prong of the *Kimbell* test.

### (3) The Trusts at Issue Were Subject To The P & A Agreement Approved by This Court

On July 29, 1988, the declaration of insolvency of the First RepublicBank Midland was accompanied by the institution in this Court of FDIC–Receiver's suit seeking approval of the transfer of assets and liabilities.[14] The Order approving the agreement and transfer to JRB of the bank business recited the finding of the Court that the transaction was in the best interests of the public, the stockholders, the depositors, and other creditors of the bank. The Order of the Court declared that JRB was

> "appointed as successor to all rights, obligations, assets, deposits, agreements and trusts held by First RepublicBank Midland as trustee, or in any other fiduciary or representative capacities, as provided in the Purchase and Assumption Agreement."

Several weeks prior to the declaration of insolvency, FDIC began soliciting acquisition proposals for the First RepublicBank business. The trust department of First RepublicBank was expressly included within the business to be transferred. On or before July 29, 1989, NCNB was declared the winning proposal. From July 29, 1989, JRB Bank functioned under the name of NCNB Texas. On November 22, 1988, pursuant to the purchase agreement, NCNB made a $210,000,000 equity investment in the bridge bank by which NCNB acquired a 20% ownership interest in the bridge bank with full voting control. The agreement contemplates NCNB acquiring the remaining ownership interest over the next five years.

### (4) The Trust Instruments Contain No Provisions to the Contrary

A central provision of the Trust Code is that it applies unless contrary provision in the trust instrument dictates otherwise. Sec. 111.002(a).[15] With regard to appointment of a successor trustee, the Texas Trust Code provides for a State District Court of competent jurisdiction to act under Sec. 113.082 to remove a trustee. Of course, a trust instrument may expressly provide that a trustee may be removed if certain conditions are satisfied. In that event, any interested party can petition the District Court to remove a trustee who has materially violated or attempted to violate a term of the trust and the violation or attempted violation results in a material financial loss to the trust, or for other cause. Sec. 113.082, Texas Trust Code. *See also Akin v. Dahl,* 661 S.W.2d 911 (Tex.1983) (The trial court must find that the trustee's hostility will affect his performance in office in order to remove the trustee.).

With respect to the jurisdictional provision of the Texas Trust Code, this Court's application of State law does not unduly infringe upon the jurisdiction scheme set out in the Trust Code. Under the Trust Code, the State District Court has original exclusive jurisdiction, with an exception not relevant here, over all proceedings concerning trusts. Sec. 115, Texas Trust Code. The jurisdiction of this Court rests on Congressional authority relevant to the nature of FDIC and NCNB Texas, a bridge bank. The exclusive jurisdiction provision of the State District Court is in a limited manner, preempted for the reasons set out earlier.

The Cowdens do not maintain that a specific provision of the trust instruments expressly prohibits the transfer of the fiduciary powers to a successor institution in the event of the insolvency of the Bank. However, it is illustrative to state that in the event the Cowden trust instruments expressly prohibited a successor banking institution from assuming fiduciary responsibilities, the Cowdens could seek the appointment of an alternate trustee in a State Court of competent jurisdiction.

---

**14.** Cause Number MO–88–CA–173, Midland–Odessa Division, Western District of Texas.

**15.** Of course certain self-dealing rules imposed by the Trust Code cannot be waived with respect to corporate trustees; a matter not relevant here.

For the foregoing reasons, the Court is of the opinion that summary judgment evidence demonstrates that there is no genuine issue as to any material fact under controlling law and that Judgment should issue for NCNB Texas and the FDIC. Texas trust and probate law relating to fiduciary succession in the circumstances of an FDIC-assisted bridge bank transaction is preempted under the Supremacy Clause by federal statutory law and by this Court's Order of July 29, 1988, in cause number MO–88–CA–173. Declaratory Judgment for NCNB Texas and FDIC shall be entered by separate Order. No attorney fees will be awarded. Costs shall be borne by the party incurring them.

## JUDGMENT

THIS COURT, by Memorandum Opinion on Cross–Motions for Summary Judgment of the parties in the above-numbered cause determined that under controlling law NCNB is the successor trustee to certain trusts for the benefit of Candice Beth Cowden and Billi Terresa Cowden by virtue of the transfer by the FDIC on July 29, 1988 of the trust department of First Republic-Bank Midland to NCNB. Accordingly,

IT IS ORDERED, ADJUDGED AND DECREED that Texas trust and probate law relating to fiduciary succession in the circumstances of an FDIC-assisted bridge bank transaction is preempted under the Supremacy Clause by federal statutory law and by this Court's Order of July 29, 1988 in cause number MO–88–CA–173. No attorney fees will be awarded. Costs shall be paid by the party incurring them.