## CITIBANK LEASING CORP. v VAN ARNEM, et al.

### Case No. 88-02543 CT

Seventeenth Judicial Circuit, Broward County

January 9, 1990

## OPINION OF THE COURT

ARTHUR M. BIRKIN, Circuit Judge.

### *ORDER GRANTING PARTIAL FINAL SUMMARY JUDGMENT*

THIS CAUSE came before the Court for hearing on December 20, 1989 on plaintiff Citibank Leasing Corp.'s ("Citibank Leasing") Motion for Summary Judgment on its claims against defendants Harold L. Van Arnem ("Van Arnem") and Van Arnem Financial Services, Inc. ("VAFS") and defendants' claims contained within their Third Amended Counterclaim. The Court having reviewed the record, hearing argument of counsel and being otherwise fully advised in the premises, finds that Citibank Leasing's motion should be granted as to liability against both defendants on Citibank Leasing's claims and on defendants' counterclaims. The motion is denied as to the amount of indebtedness owed by defendants to Citibank Leasing. This ruling is based upon the following memorandum opinion.

## MEMORANDUM OPINION
### INTRODUCTION

Citibank Leasing's claim seeks to collect monies owed on a February 20, 1987 Promissory Note executed by VAFS in the amount of $1,564,713.00 (the "Note") and on a Personal Guaranty executed by Van Arnem securing the Note (the "Guaranty"), and to foreclose upon a security interest in the assets of VAFS pursuant to a Security Agreement executed by the parties (the "Security Agreement").

Defendants assertions are set out in the third amended counterclaim and affirmative defenses. The gravamen of defendants' asserts set forth in the pleadings and as stated by defendants' counsel at the hearing on this motion, is that employees of the entity which originally held the Note, Guaranty and Security Agreement—Caribank Leasing Corp. ("CLC")—engaged in tortious misconduct in inducing defendants to enter into those agreements and, thereafter, in attempting to recover on those instruments.

Citibank Leasing contends that all of defendants' counterclaims and affirmative defenses are barred by the federal common law doctrine first enunciated in *D'Oench, Duhume & Co. v FDIC*, 315 U.S. 447, 62 S.Ct. 676 (!942) (the "D'Oench, Duhne doctrine"). According to Citibank Leasing, the *D'Oench, Duhme* doctrine bars counterclaims and affirmative defenses against the Federal Deposit Insurance Corporation ("FDIC") and parties who take the assets of a failed financial institution from the FDIC. As set forth below, the Court agrees with Citibank Leasing as to the affirmative defenses and counterclaims asserted here.

Defendants do not dispute the existence of the *D'Oench, Duhme* doctrine, its binding effect on this Court, or that the doctrine would bar their counterclaims and affirmative defenses as to the assets of the failed financial institution at issue here, Caribank Dania, Florida ("Caribank"). Defendants, however, point out that the Note and Guaranty were not held directly by Caribank, but instead by CLC, a wholly-owned subsidiary of Caribank, and for that reason contend the *D'Oench, Duhme* doctrine should not apply. The Court rejects defendants' contention and finds that there are no genuine issues of material facts and that Citibank Leasing is entitled to summary judgment on the issue of liability.

### UNDISPUTED FACT

The following facts are not disputed and have been established in the record:

1. Caribank was formerly a Florida Banking corporation.

2. CLC was a wholly-owned subsidiary of Caribank.

3. On February 20, 1987, VAFS executed and delivered to CLC a Promissory Note in favor of CLC in the face amount of $1,564,713.00.

4. Van Arnem personally guaranteed VAFS's indebtedness to CLC under the Note by executing and delivering to CLC the Guaranty.

5. VAFS further secured the Note by its execution and delivery to CLC of a Security Agreement and an Amendment to Security Agreement (the "Security Agreement") granting CLC a security interest in the assets of VAFS.

6. VAFS defaulted on the Note by failing to pay the amount due on November 15, 1987 and failing to make all subsequent payments.

7. On December 9, 1988, the COmptroller for the State of Florida determined Caribank to be insolvent. Pursuant to the Comptroller's petition, the Circuit Court of Broward County appointed the FDIC as Caribank's Liquidator.

8. On December 9, 1988, the FDIC, as Liquidator of Caribank, entered into a "Purchase and Assumption Agreement" with Citibank in which Citibank, a national banking association, purchased and assets and assumed the deposit and certain other specified and designated liabilities of Caribank.

9. Included among the assets purchased by Citibank from the FDIC was the stock of CLC, whose assets included the Note, the Guaranty and the Security Agreement. The sale to Citibank was approved by the Broward County Circuit Court.

10. Citibank Leasing is a wholly-owned subsidiary of Citibank and is presently the owner and holder of the Note, Guaranty and Security Agreement.

11. While there are numerous allegations of misconduct against the employees of CLC prior to the insolvency of Craibank, there are no allegations made by defendants and no evidence presented in this action of any misconduct by any person associated with either Citibank or Citibank Leasing.

12. The Note provides that Citibank Leasing is entitled to its costs and attorney's fees incurred in suing to collect the subject indebtedness.

## CONCLUSIONS OF LAW

Based upon the undisputed facts set forth above, the Court finds that Citibank Leasing is entitled to summary judgment as to liability on its claims and on defendants' counterclaims based upon the following:

1. In *D'oench, Duhme & Co. v FDIC,* 315 U.S. 447, 62 S.Ct. 676 (1942), the Supreme Court held that a maker of a note that is in the possession of banking authorities is estopped from asserting, as defenses to an action on the note, a failure of consideration or other oral side agreements which would have the effect of misleading banking authorities. Over the succeeding years, this doctrine has been extended to bar defenses and counterclaims based upon virtually every imaginable form of alleged misconduct of the insolvent financial institutions. *See e.g., Langley v FDIC,* 484 U.S. 86, 108 S.Ct. 396 (1987); *FDIC v Roldan-Fonseca,* 795 F.2d 1102 (1st Cir. 1986); *FDIC v Lattimore Land Corp.,* 656 F.2d 139 (6th Cir. 1981); *FDIC v Hoover-Morris Enterprises,* 542 F.2d 785 (5th Cir. 1981); *FDIC v Wyndward Pines, INc.,* 708 F.Supp. 329 (M.D. Fla. 1989); *FDIC v Simon,* 607 F.Supp. 1254 (D.C. Ill. 1985). The applicable law is clear that the doctrine applies equally to a "successor in interest" of the FDIC, in this case Citibank and Citibank Leasing. *RSR Properties, Inc. v FDIC,* 706 F.Supp. 524 (W.D. Tex. 1989); *First National Bank of Andrews v FDIC,* 707 F.Supp. 265, 271 n. 12 (W.D. Tex. 1989).

2. The central rationale for the *D'Oench, Duhme* doctrine is to enable the bank regulators to property value a failed bank's assets in order to determine whether to liquidate the bank or to sell its deposits and assets in a purchase-and-assumption. *FDIC v Jenkins,* — F.2d — (11th Cir. 1989); *Gunter v Hutchison,* 674 F.2d 862 (11th Cir. 1982). That simply would not be possible should the failed bank's assets be subject to defenses based upon some alleged misconduct of the failed bank. For that reason, the *D'Oench, Duhme* doctrine renders the FDIC and its successors holders in due course of the assets acquired. *First Nat'l Bank of Andrews, supra.*

3. The Court rejects defendants' contentions that the *D'Oench, Duhme* doctrine is inapplicable to these facts on the ground that the Note, the Guaranty and the Security Agreement were held in Caribank's wholly-owned subsidiary rather than in Caribank, itself. Defendants cite no authority for this contention and it is not persuasive. Defendants overlook the fact that under Florida law the Comptroller is authorized to take control and designate a receiver—in this case the FDIC—over all the assets and affairs of a failed bank. *Dunscombe v Smith,* 174 So. 38 (Fla. 1937); Fla. Stat. § 658.80. The entire subsidiary, including all of its assets, constitute assets of the failed institution, and, necessarily, pass through the FDIC to successors such as Citibank Leasing to wind up the affairs of the failed bank. As such, application of the *D'Oench, Duhme* doctrine to these assets is necessary to carry out the purpose of the doctrine.

**163**

4. Pursuant to the foregoing, the Court finds the *D'Oench, Duhme* doctrine is fully applicable to the case at bar and therefore, defendants are barred as a matter of law from asserting the affirmative defenses and counterclaims they have plead in this action.

5. Defendants have defaulted on the Note and the Guaranty and are liable to Citibank Leasing for the damages resulting from that default.

## CONCLUSION

Based upon the foregoing, it is Ordered and Adjudged as follows:

a. Final Summary Judgment is hereby entered in favor of Citibank Leasing as to defendants' liability on the Note and the Guaranty.

b. Final Summary Judgment is hereby entered in favor of Citibank Leasing on defendants' counterclaims and affirmative defenses.

c. Final Summary Judgment is hereby entered in Citibank Leasing's favor as to its claim for foreclosure of its security interest in the assets of VAFS as set forth in the Security Agreement.

d. There exists a genuine issue of material fact as to the amount of defendants' indebtedness to Citibank Leasing and, accordingly, Citibank Leasing's motion is denied on the issue of the amount of damages. The Court will hold an evidentiary hearing (to be noticed by either party) solely on the issue of the amount of defendants' liability to Citibank Leasing under the Note and Guaranty.

e. The Court further finds that Citibank Leasing is entitled to an award of its costs and attorney's fees incurred in prosecuting this action and directs that said costs and fees will be added to the judgment against defendants. Citibank Leasing shall submit affidavits as to the amount of said cost and attorney's fees within thirty (30) days from the date of the entry of judgment as to Citibank Leasing's damages. Defendants shall submit any objection to the amount of Citibank Leasing's costs and attorney's fees within ten (10) days from the service of said affidavits. If objection is made, the Court will conduct an evidentiary hearing in this matter.

f. Jurisdiction of this action is retained to enter further orders as are proper including, without limitation, writs of possession and deficiency judgments.

DONE and ORDERED at Fort Lauderdale, Broward County, this 9th day of January, 1990.