(Slip Opinion) OCTOBER TERM, 2018 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DAWSON ET UX. *v.* STEAGER, WEST VIRGINIA STATE TAX COMMISSIONER

### CERTIORARI TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

No. 17–419. Argued December 3, 2018—Decided February 20, 2019

After petitioner James Dawson retired from the U. S. Marshals Service, his home State of West Virginia taxed his federal pension benefits as it does all former federal employees. The pension benefits of certain former state and local law enforcement employees, however, are exempt from state taxation. See W. Va. Code Ann. §11–21–12(c)(6). Mr. Dawson sued, alleging that the state statute violates the intergovernmental tax immunity doctrine as codified at 4 U. S. C. §111. Under that statute, the United States consents to state taxation of the pay or compensation of federal employees, but only if the state tax does not discriminate on the basis of the source of the pay or compensation. A West Virginia trial court found no significant differences between Mr. Dawson's job duties as a federal marshal and those of the state and local law enforcement officers exempted from taxation and held that the state statute violates §111's antidiscrimination provision. Reversing, the West Virginia Supreme Court of Appeals emphasized that the state tax exemption applies only to a narrow class of state retirees and was never intended to discriminate against former federal marshals.

*Held*: The West Virginia statute unlawfully discriminates against Mr. Dawson as §111 forbids. A State violates §111 when it treats retired state employees more favorably than retired federal employees and no "significant differences between the two classes" justify the differential treatment. *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 814–816. Here, West Virginia expressly affords state law enforcement retirees a tax benefit that federal retirees cannot receive, and there are no "significant differences" between Mr. Dawson's former job responsibilities and those of the tax-exempt state law enforce-

ment retirees.

The narrow preference should be permitted, the State argues, because it affects too few people to meaningfully interfere with federal government operations.  Section 111, however, disallows *any* state tax that discriminates against a federal officer or employee—not just those that seem especially cumbersome.  And in *Davis* the Court refused a similar invitation to add unwritten qualifications to §111.  That is not to say that the narrowness of a state tax exemption is irrelevant.  If a State exempts only a narrow subset of state retirees, it can comply with §111 by exempting only the comparable class of federal retirees.  The State also argues that the statute is not intended to harm federal retirees but to help certain state retirees.  The "State's interest in adopting the discriminatory tax," however, "is simply irrelevant."  *Davis*, 489 U. S., at 816.

For reasons other than job responsibilities, the State insists, retired U. S. Marshals and tax-exempt state law enforcement retirees are not "similarly situated."  But the State's statute does not draw any such lines.  It singles out for preferential treatment retirement plans associated with particular state law enforcement officers.  The distinguishing characteristic of the retirement plans is the nature of the jobs previously held by retirees who may participate in them.  The state trial court found no "significant differences" between Mr. Dawson's former job responsibilities as a U. S. Marshal and those of the state law enforcement retirees who qualify for the tax exemption, and the West Virginia Supreme Court of Appeals did not upset that finding.  By submitting that Mr. Dawson's former job responsibilities are also similar to those of other state law enforcement retirees who do not qualify for a tax exemption, the State mistakes the nature of the inquiry.  The relevant question under §111 is not whether federal retirees are similarly situated to state retirees who do not receive a tax break; it is whether they are similarly situated to those who do.  Finally, the State says that the real distinction may not be based on job duties at all but on the relative generosity of pension benefits.  The statute as enacted, however, does not classify persons or groups on that basis.  And an implicit but lawful distinction cannot save an express and unlawful one.  See, *e.g.*, *id.,* at 817.  Pp. 3–8.

Reversed and remanded.

GORSUCH, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 17–419

———————

## JAMES DAWSON, ET UX., PETITIONERS v. DALE W. STEAGER, WEST VIRGINIA STATE TAX COMMISSIONER

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

[February 20, 2019]

JUSTICE GORSUCH delivered the opinion of the Court.

If you spent your career as a state law enforcement officer in West Virginia, you're likely to be eligible for a generous tax exemption when you retire. But if you served in federal law enforcement, West Virginia will deny you the same benefit. The question we face is whether a State may discriminate against federal retirees in that way.

For most of his career, James Dawson worked in the U. S. Marshals Service. After he retired, he began looking into the tax treatment of his pension. It turns out that his home State, West Virginia, doesn't tax the pension benefits of certain former state law enforcement employees. But it does tax the benefits of all former federal employees. So Mr. Dawson brought this lawsuit alleging that West Virginia violated 4 U. S. C. §111. In that statute, the United States has consented to state taxation of the "pay or compensation" of "officer[s] or employee[s] of the United States," but only if the "taxation does not discriminate against the officer or employee because of the source

of the pay or compensation."  §111(a).

Section 111 codifies a legal doctrine almost as old as the
Nation.  In *McCulloch* v. *Maryland*, 4 Wheat. 316 (1819),
this Court invoked the Constitution's Supremacy Clause
to invalidate Maryland's effort to levy a tax on the Bank of
the United States.  Chief Justice Marshall explained that
"the power to tax involves the power to destroy," and he
reasoned that if States could tax the Bank they could
"defeat" the federal legislative policy establishing it.  *Id.*,
at 431–432.  For the next few decades, this Court inter-
preted *McCulloch* "to bar most taxation by one sovereign
of the employees of another."  *Davis* v. *Michigan Dept. of
Treasury*, 489 U. S. 803, 810 (1989).  In time, though, the
Court softened its stance and upheld neutral income tax-
es—those that treated federal and state employees with
an even hand.  See *Helvering* v. *Gerhardt*, 304 U. S. 405
(1938); *Graves* v. *New York ex rel. O'Keefe*, 306 U. S. 466
(1939).  So eventually the intergovernmental tax immu-
nity doctrine came to be understood to bar only *discrimina-
tory* taxes.  It was this understanding that Congress "con-
sciously . . . drew upon" when adopting §111 in 1939.
*Davis*, 489 U. S., at 813.

It is this understanding, too, that has animated our
application of §111.  Since the statute's adoption, we have
upheld an Alabama income tax that did not discriminate
on the basis of the source of the employees' compensation.
*Jefferson County* v. *Acker*, 527 U. S. 423 (1999).  But we
have invalidated a Michigan tax that discriminated "in
favor of retired state employees and against retired federal
employees."  *Davis*, 489 U. S., at 814.  We have struck
down a Kansas law that taxed the retirement benefits of
federal military personnel at a higher rate than state and
local government retirement benefits.  *Barker* v. *Kansas*,
503 U. S. 594, 599 (1992).  And we have rejected a Texas
scheme that imposed a property tax on a private company
operating on land leased from the federal government, but

a "less burdensome" tax on property leased from the State. *Phillips Chemical Co.* v. *Dumas Independent School Dist.*, 361 U. S. 376, 378, 380 (1960).

Mr. Dawson's own attempt to invoke §111 met with mixed success. A West Virginia trial court found it "undisputed" that "there are no significant differences between Mr. Dawson's powers and duties as a US Marshal and the powers and duties of the state and local law enforcement officers" that West Virginia exempts from income tax. App. to Pet. for Cert. 22a. In the trial court's judgment, the State's statute thus represented "precisely the type of favoritism" §111 prohibits. *Id.*, at 23a. But the West Virginia Supreme Court of Appeals saw it differently. In reversing, the court emphasized that relatively few state employees receive the tax break denied Mr. Dawson. The court stressed, too, that the statute's "intent . . . was to give a benefit to a narrow class of state retirees," not to harm federal retirees. *Id.*, at 15a. Because cases in this field have yielded inconsistent results, much as this one has, we granted certiorari to afford additional guidance. 585 U. S. \_\_\_ (2018).

We believe the state trial court had it right. A State violates §111 when it treats retired state employees more favorably than retired federal employees and no "significant differences between the two classes" justify the differential treatment. *Davis*, 489 U. S., at 814–816 (1989) (internal quotation marks omitted); *Phillips Chemical Co.*, 361 U. S., at 383. Here, West Virginia expressly affords state law enforcement retirees a tax benefit that federal retirees cannot receive. And before us everyone accepts the trial court's factual finding that there aren't any "significant differences" between Mr. Dawson's former job responsibilities and those of the tax-exempt state law enforcement retirees. Given all this, we have little difficulty concluding that West Virginia's law unlawfully "discriminate[s]" against Mr. Dawson "because of the

source of [his] pay or compensation," just as §111 forbids.

The State offers this ambitious rejoinder. Even if its statute favors some state law enforcement retirees, the favored class is very small. Most state retirees are treated no better than Mr. Dawson. And this narrow preference, the State suggests, should be permitted because it affects so few people that it couldn't meaningfully interfere with the operations of the federal government.

We are unpersuaded. Section 111 disallows *any* state tax that discriminates against a federal officer or employee—not just those that seem to us especially cumbersome. Nor are we inclined to accept West Virginia's invitation to adorn §111 with a new and judicially manufactured qualification that cannot be found in its text. In fact, we have already refused an almost identical request. In *Davis*, we rejected Michigan's suggestion that a discriminatory state income tax should be allowed to stand so long as it treats federal employees or retirees the same as "the vast majority of voters in the State." 489 U. S., at 815, n. 4. We rejected, too, any suggestion that a discriminatory tax is permissible so long as it "does not interfere with the Federal Government's ability to perform its governmental functions." *Id.*, at 814. In fact, as long ago as *McCulloch*, Chief Justice Marshall warned against enmeshing courts in the "perplexing" business, "so unfit for the judicial department," of attempting to delineate "what degree of taxation is the legitimate use, and what degree may amount to the abuse of power." 4 Wheat., at 430.

That's not to say the breadth or narrowness of a state tax exemption is irrelevant. Under §111, the scope of a State's tax exemption may affect the scope of its resulting duties. So if a State exempts from taxation all state employees, it must likewise exempt all federal employees. Conversely, if the State decides to exempt only a narrow subset of state retirees, the State can comply with §111 by exempting only the comparable class of federal retirees.

But the narrowness of a discriminatory state tax law has never been enough to render it necessarily lawful.

With its primary argument lost, the State now proceeds more modestly. Echoing the West Virginia Supreme Court of Appeals, the State argues that we should uphold its statute because it isn't intended to harm federal retirees, only to help certain state retirees. But under the terms of §111, the "State's interest in adopting the discriminatory tax, no matter how substantial, is simply irrelevant." *Davis*, 489 U. S., at 816. We can safely assume that discriminatory laws like West Virginia's are almost always enacted with the purpose of benefiting state employees rather than harming their federal counterparts. Yet that wasn't enough to save the state statutes in *Davis*, *Barker*, or *Phillips*, and it can't be enough here. Under §111 what matters isn't the intent lurking behind the law but whether the letter of the law "treat[s] those who deal with" the federal government "as well as it treats those with whom [the State] deals itself." *Phillips Chemical Co.*, 361 U. S., at 385.

If treatment rather than intent is what matters, the State suggests that it should still prevail for other reasons. Section 111 prohibits "discriminat[ion]," something we've often described as treating similarly situated persons differently. See *Davis*, 489 U. S., at 815–816; *Phillips Chemical Co.*, 361 U. S., at 383. And before us West Virginia insists that even if retired U. S. Marshals and tax-exempt state law enforcement retirees had similar job responsibilities, they aren't "similarly situated" for other reasons. Put another way, the State contends that the difference in treatment its law commands doesn't qualify as unlawful discrimination because it is "directly related to, and justified by," a lawful and "significant difference" between the two classes. *Davis*, 489 U. S., at 816 (internal quotation marks and alteration omitted).

In approaching this argument, everyone before us

agrees on at least one thing. Whether a State treats simi-
larly situated state and federal employees differently
depends on how the State has defined the favored class.
See *id.*, at 817. So if the State defines the favored class by
reference to job responsibilities, a similarly situated fed-
eral worker will be one who performs comparable duties.
But if the State defines the class by reference to some
other criteria, our attention should naturally turn there.
If a State gives a tax benefit to all retirees over a certain
age, for example, the comparable federal retiree would be
someone who is also over that age.

So how has West Virginia chosen to define the favored
class in this case? The state statute singles out for prefer-
ential treatment retirement plans associated with West
Virginia police, firefighters, and deputy sheriffs. See W.
Va. Code Ann. §11–21–12(c)(6) (Lexis 2017). The distin-
guishing characteristic of these plans is the nature of the
jobs previously held by retirees who may participate in
them; thus, a similarly situated federal retiree is someone
who had similar job responsibilities to a state police of-
ficer, firefighter, or deputy sheriff. The state trial court
correctly focused on this point of comparison and found no
"significant differences" between Mr. Dawson's former job
responsibilities as a U. S. Marshal and those of the state
law enforcement retirees who qualify for the tax exemp-
tion. App. to Pet. for Cert. 22a. Nor did the West Virginia
Supreme Court of Appeals upset this factual finding. So
looking to how the State has chosen to define its favored
class only seems to confirm that it has treated similarly
situated persons differently because of the source of their
compensation.

Of course, West Virginia sees it otherwise. It accepts
(for now) that its statute distinguishes between persons
based on their former job duties. It accepts, too, the trial
court's finding that Mr. Dawson's former job responsibili-
ties are materially identical to those of state retirees who

qualify for its tax exemption. But, the State submits, Mr. Dawson's former job responsibilities are *also* similar to those of other state law enforcement retirees who *don't* qualify for its tax exemption. And, the State insists, the fact that it treats federal retirees no worse than (some) similarly situated state employees should be enough to save its statute.

But this again mistakes the nature of our inquiry. Under §111, the relevant question isn't whether federal retirees are similarly situated to state retirees who *don't* receive a tax benefit; the relevant question is whether they are similarly situated to those who *do.* So, for example, in *Phillips* we compared the class of federal lessees with the *favored* class of state lessees, even though the State urged us to focus instead on the disfavored class of private lessees. 361 U. S., at 381–382. In *Davis*, we likewise rejected the State's effort to compare the class of federal retirees with state residents who did not benefit from the tax exemption rather than those who did. See 489 U. S., at 815, n. 4.

At this point the State is left to play its final card. Now, it says, maybe the real distinction its statute draws isn't based on former job duties at all. Maybe its statute actually favors certain state law enforcement retirees only because their pensions are less generous than those of their federal law enforcement counterparts. At the least, the State suggests, we should remand the case to the West Virginia courts to explore this possibility.

The problem here is fundamental. While the State was free to draw whatever classifications it wished, the statute it enacted does not classify persons or groups based on the relative generosity of their pension benefits. Instead, it extends a special tax benefit to retirees who served as West Virginia police officers, firefighters, or deputy sheriffs—and it categorically denies that same benefit to retirees who served in similar federal law enforcement posi-

tions. Even if Mr. Dawson's pension turned out to be *identical* to a state law enforcement officer's pension, the law as written would deny him a tax exemption. West Virginia's law thus discriminates "because of the source of . . . compensation or pay" in violation of §111. Whether the unlawful classification found in the text of a statute might serve as some sort of proxy for a lawful classification hidden behind it is neither here nor there. No more than a beneficent legislative intent, an implicit but lawful distinction cannot save an express and unlawful one.

Our precedent confirms this too. In *Davis*, Michigan argued that a state law expressly discriminating between federal and state retirees was really just distinguishing between those with more and less generous pensions. *Id.*, at 816. We rejected this attempt to rerationalize the statute, explaining that "[a] tax exemption truly intended to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits" but "would discriminate on the basis of the amount of benefits received by individual retirees." *Id.*, at 817. The fact is, when States seek to tax the use of a fellow sovereign's property, the Constitution and Congress have always carefully constrained their authority. *Id.*, at 810–814. And in this sensitive field it is not too much to ask that, if a State *wants* to draw a distinction based on the generosity of pension benefits, it enact a law that actually *does* that.

Because West Virginia's statute unlawfully discriminates against Mr. Dawson, we reverse the judgment of the West Virginia Supreme Court of Appeals and remand the case for further proceedings not inconsistent with this opinion, including the determination of an appropriate remedy.

*It is so ordered.*