IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WESTERN RIVERS CONSERVANCY, | ) | No. 37516-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| STEVENS COUNTY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Stevens County assessed a tax against Western Rivers

Conservancy when Western Rivers sold a tract of timberland to the United States Forest

Service (USFS) for recreational purposes. The tax would not have applied if the land had

been sold to the Washington State Parks and Recreation Commission for the same

purpose. Western Rivers paid the tax under protest, claiming it violated the supremacy

clause of the United States Constitution by discriminating against land sales to the federal

government. Western Rivers then filed suit in Spokane County Superior Court, successfully obtaining an order of summary judgment finding the tax invalid and void, and reimbursing the tax with interest.

We agree Western Rivers is entitled to summary judgment. Under the doctrine of intergovernmental tax immunity, if the State provides a tax break for a land sale to one of its own entities, the same tax break must be afforded to a substantially similar land sale to a foreign sovereign. The land sale here was substantially similar to sales to the parks and recreation commission that are protected from taxation. Given this comparability, the tax assessment against Western Rivers based on its land sale to the USFS cannot stand.

FACTS

In 2015, Western Rivers Conservancy sold a large tract of Stevens County timberland to the USFS. The USFS intended to add the property to the Colville National Forest and route a portion of a national scenic trail through it. The property had been designated by the county assessor as "forestland," and therefore subject to a lower tax rate than normal property taxes. As the sale to the USFS drew to a close, Stevens County issued a notice that it was removing the forestland designation from the property, triggering the imposition of a $194,652.18 compensating tax. The county removed the designation for two reasons. First was the sale of the property to the USFS, an entity

2

exempt from taxation. Second, the county determined the property was no longer being primarily used for the growth and harvesting of timber. Western Rivers paid the tax under protest on the day the property was sold to the USFS.

Western Rivers brought suit against Stevens County for a refund of the compensating tax. It argued imposition of the tax violated the doctrine of intergovernmental tax immunity under the supremacy clause of the United States Constitution. U.S. CONST. art. VI, cl. 2. Western Rivers pointed out that those who sell forestland to the Washington State Parks and Recreation Commission for recreation purposes are exempted from paying the compensating tax. As the exemption did not apply to the sale to the USFS, Western Rivers contended the exemption unlawfully discriminated against those who deal with the federal government. The trial court agreed and granted summary judgment to Western Rivers. The court ordered Stevens County to refund the tax, with prejudgment interest on the entire sum previously collected.

Stevens County now appeals the trial court's adverse summary judgment order.

## ANALYSIS

We review a summary judgment order de novo. *Colo. Structures, Inc. v. Blue Mountain Plaza, LLC,* 159 Wn. App. 654, 661, 246 P.3d 835 (2011). The question is whether the evidence, viewed in the light most favorable to the nonmoving party, reveals

a genuine issue of material fact for trial. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). If there are no material factual disputes, summary judgment is appropriate as a matter of law. *Id.*[1]

This case turns on the validity of the compensating tax imposed on Western Rivers when it sold timberland to the USFS. Washington protects privately held timber and forestlands from standard ad valorem property taxes. *See* chapter 84.33 RCW. To qualify for protection, the property must meet the definition of "forestland" as set forth in RCW 84.33.035(5). Forestland property is land "devoted primarily to growing and harvesting timber." *Id.* If property is removed from the forestland designation, with some exceptions a compensating tax is imposed. Former RCW 84.33.140(11) (2014).

Shortly after Western Rivers announced the plan to sell its forestland to the USFS, Stevens County issued a notification that it was removing the forestland designation and imposing a compensating tax for each parcel involved in the sale. The county

---

[1] Stevens County claims the trial court made factual findings, as part of a December 2018 letter to the parties explaining its ruling in the initial summary judgment proceedings, that are unchallenged and therefore binding on appeal. This assertion misapprehends the summary judgment standard. Factual findings on contested issues are not proper in the summary judgment context. *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991). Our de novo analysis is the same as the trial court. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). We therefore owe no deference to the trial court's assessment of the evidence.

eventually supplied two reasons for the removal: (1) the land was being sold to a buyer that was exempt from taxation (RCW 84.33.140(5)(c)), and (2) the land was not being managed by Western Rivers for the growth and harvest of timber (RCW 84.33.140(5)(e)(i)). Neither basis for taxation would have applied had Western Rivers sold the timberland "to the parks and recreation commission for park and recreation purposes." RCW 84.33.140(13)(d); *see* RCW 84.33.140(5)(e)(i). But because the USFS is not our state's parks and recreation commission, Stevens County assessed the tax.

Western Rivers acknowledges that, under the plain terms of the statute, its sale to the USFS is not exempt from the compensating tax. Nevertheless, Western Rivers argues the compensating tax must be exempted as a matter of law. According to Western Rivers, imposition of the tax would violate the supremacy clause by imposing a discriminatory tax on those who deal with the federal government. Western Rivers's legal argument falls under a doctrine known as intergovernmental tax immunity. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 425-37, 4 L. Ed. 579 (1819).

The tax immunity doctrine restricts the imposition of taxes by one sovereign (such as a state) on another sovereign (such as the federal government). The doctrine not only forbids direct taxation on a separate sovereign, it also prohibits taxation on a private entity based on the entity's dealings with a separate sovereign. *Davis v. Michigan Dep't*

*of Treasury*, 489 U.S. 803, 813, 109 S. Ct. 1500, 4 L. Ed. 891 (1989). The tax immunity

doctrine requires equal tax treatment unless there are significant differences between

those who deal with one sovereign and those who deal with the other. *Id.* at 815-16.

The tax immunity doctrine's "significant differences test" requires identifying and

analyzing the definitional rule used by a sovereign to carve out a tax-protected class.

Once the definitional rule is identified, its protections must be extended to foreign entities

on transactions meeting the same rule. For example, a state law exempting all land sales

to state agencies from taxation would have a broad definitional rule, applicable to all land

sales. To comport with the tax immunity doctrine, a similarly broad exception would need

to extend to land sales to all federal agencies. *See id*. at 816.

The recent case of *Dawson v. Steager*, __ U.S. __, 139 S. Ct. 698, 203 L. Ed. 2d

29 (2019) illustrates the significant differences test in practice.[2] *Dawson* concerned a

West Virginia tax exemption on pension benefits afforded to a subset of the state's retired

police officers, firefighters and sheriff's deputies. 139 S. Ct. at 705. Mr. Dawson, a

retired United States Marshall living in West Virginia, was denied the exemption because

his pension was derived from work as a federal law enforcement officer. Mr. Dawson

---

[2] *Dawson* specifically involved the application of 4 U.S.C. § 111. 139 S. Ct. at 702. That statute is simply a codification of the doctrine of intergovernmental tax immunity in relation to the taxation of federal employees. *Id*.

contended this difference in treatment was discriminatory. *Id*. at 702. The United States Supreme Court agreed.

*Dawson* recognized that, to be valid, West Virginia's tax exemption for state retirees must be extended to similarly situated federal retirees. *Id*. at 703-04. Given this imperative, Mr. Dawson could only be denied the tax exemption if his circumstances were significantly different from the state retirees who received the exemption. The Supreme Court determined West Virginia defined the protected class of retirees by job type, i.e. work in law enforcement. *Id*. at 705. Because Mr. Dawson's pension was from work in law enforcement, there was no significant difference between him and the recipients of the state exemption. *Id*. The tax immunity doctrine therefore required the exemption be extended to Mr. Dawson. *Id*. at 706.

With these legal principles in mind, we turn to the case at hand. The applicable tax exemption involves forestland sales to the Washington State Parks and Recreation Commission for recreation purposes. RCW 84.33.140(13)(d). By its plain terms, this statute favors land sales to an entity of the state over sales to the federal government. The tax immunity doctrine therefore requires the state's exemption be extended to federal land sales so long as there are no significant differences between the state's exempted land sales and sales to the federal government.

Stevens County claims there are significant differences in this case justifying disparate tax treatment. According to Stevens County, RCW 84.33.140(13)(d)'s definitional rule focuses on the type of organization protected from taxation. Specifically, the statute exempts land sales to the Washington State Parks and Recreation Commission from compensating taxes. While this protection is facially discriminatory, Stevens County claims it is not discriminatory as to the USFS. Because the duties of the USFS and the parks and recreation commission differ,[3] the county argues the tax immunity doctrine does not require exempting the sale of timberland to the USFS from a compensating tax.

We disagree with Stevens County's characterization of the definitional rule set by RCW 84.33.140(13)(d). The statute does not exempt from taxation all forestland sales to the parks and recreation commission. Only sales for parks and recreation purposes are protected. This specificity reveals that the true definitional feature of the tax exemption in RCW 84.33.140(13)(d) is an exemption based on a land sale for recreational purposes.

The fact that Washington favors recreational land sales to its parks and recreation commission over similar sales to other state agencies does not change our assessment of

---

[3] The powers and duties of the parks and recreation commission are narrowly tied to maintaining parks and parkways for aesthetic and recreational purposes. Former RCW 79A.05.030 (2005); RCW 79A.05.035. The USFS has broader duties, including administrating lands for "recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528.

the definitional rule set by RCW 84.33.140(13)(d). We recognize the statute treats the

USFS the same as state agencies other than the parks and recreation commission. But the

"relevant question" for tax immunity purposes "isn't whether [federal land sales] are

similarly situated to [state land sales that] *don't* receive a tax benefit; the relevant

question is whether they are similarly situated to those [that] *do.*" *Dawson*, 193 S. Ct. at

705. The simple fact is our state law confers a tax benefit to a portion of land sales to the

parks and recreation commission, a state agency. As a result, the tax immunity doctrine

requires substantially similar sales to a federal agency, such as the USFS, be treated

equally for tax purposes as sales to the protected state agency.

At summary judgment, Western Rivers produced evidence showing the land sale

to the USFS was for recreation purposes. Western Rivers produced a letter from the

USFS announcing its intent to acquire the land and manage it for public access and

recreation. Stevens County complains there are questions of fact as to whether USFS's

stated intent was accurate. But Stevens County points to no evidence in the record to

support this position. After a moving party submits sufficient evidence to justify summary

judgment, relief cannot be denied on the basis of speculation or argumentative assertions.

*White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997). Because Western Rivers produced

uncontested evidence showing its land sale met the definitional purpose of a tax exemption under RCW 84.33.140(13)(d), summary judgment was proper.

As a final matter, Stevens County contends that, even if Western Rivers was entitled to summary judgment, the trial court erred by applying prejudgment interest on the entirety of the collected compensating tax. According to Stevens County, the trial court should have first conducted an inquiry into the amount of tax Western Rivers should have lawfully paid before imposing prejudgment interest on the excess collected. Western Rivers answers that the entire tax was invalid and void as a matter of law, and thus it was unnecessary for the court to inquire into whether any of the tax was lawfully paid. We agree with Western Rivers. *Moses Lake Homes, Inc. v. Grant County*, 365 U.S. 744, 752, 81 S. Ct. 870, 6 L. Ed. 2d 66 (1961) (constitutionally invalid tax may not be exacted).

For the reasons set forth above, the entire compensating tax assessed against Western Rivers was discriminatory and therefore unlawful. Western Rivers was properly granted summary judgment and awarded reimbursement of the tax, together with interest from the date of payment. *See* RCW 84.68.030.

CONCLUSION

The order of summary judgment and refund award are affirmed.

_____, C.J.
                              Pennell, C.J.

WE CONCUR:

_____, J.
Siddoway, J.

_____, J.
Fearing, J.